118 F.3d 1386
 97 Cal. Daily Op. Serv. 5431, 97 Daily Journal
D.A.R. 8805
Ralph W. KEITH; Esther May Keith; Harold E. Grady; Edith
W. Grady; James B. Gillespie; Helen Gillespie; National
Association for the Advancement of Colored People; Sierra
Club; Environmental Defense Fund; Freeway Fighters,
Plaintiffs-Appellees,
v.
John A. VOLPE, as Secretary of Transportation; Sheridan A.
Farin; Donald E. Trull, as Division Engineer, Federal
Highway Administration, Department of Transportation;
California Highway Commission; California Department of
Public Works; James A. Moe, as Director of California
Department of Public Works; Robert Datel, as State Highway
Engineer, Division of Highways, Department of Public Works, Defendants,
Robert L. Kudler, Non-party-in-Interest-Appellant.
 No. 96-56437.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 2, 1997.
Decided July 9, 1997.
 
 Charles F. Kester, Woodland Hills, CA; and Wayne W. Smith, Gibson, Dunn & Crutcher, Los Angeles, CA, for Non-party-in-Interest-Appellant.
 Carlyle W. Hall, Jr., Andrew R. Henderson, Susanne M. Browne, Hall & Associates, Los Angeles, CA, for Plaintiffs-Appellees.
 O.J. Solander, California Department of Transportation, Sacramento, CA, for Defendants.
 Appeal from the United States District Court for the Central District of California; Harry Pregerson, Circuit Judge, Presiding. D.C. No. CV-72-00355-HP.
 Before: SCHROEDER, BRUNETTI and O'SCANNLAIN, Circuit Judges.
 O'SCANNLAIN, Circuit Judge.
 
 
 1
 We must decide whether a federal consent decree bars the erection of outdoor advertising displays along the Interstate 105 freeway in Los Angeles County.
 
 
 2
 * Robert L. Kudler, an advertising billboard developer, appeals the district court's entry of a preliminary injunction prohibiting the State of California Department of Transportation, Gary W. Bush, James W. Van Loben Sels, and their agents (collectively, "Caltrans") from issuing any permit to Kudler, in accordance with a state superior court order under the California Outdoor Advertising Act ("COAA"), Cal. Bus. & Prof.Code §§ 5200, et. seq. (West 1996), that would allow him to place billboards or other outdoor advertising displays along the Interstate 105 freeway ("I-105")[1] in Los Angeles County. This action in federal district court sought to enforce the Final Environmental Impact Statement ("EIS") filed on July 21, 1977 and the Final Amended Consent Decree ("Consent Decree") filed on September 22, 1981.[2]
 
 
 3
 The Consent Decree and EIS, together, formed a settlement agreement which permitted federal and state officials to proceed with the construction of I-105, and plaintiffs in turn were assured that the defendants would mitigate, inter alia, negative aesthetic effects on motorists and surrounding communities. The Consent Decree ordered that "[t]he I-105 shall be constructed as a landscaped freeway." The EIS provided that I-105 should be fully landscaped, in part "to shield undesirable visual elements of the project," to make the freeway in "visual harmony with the communities along the right-of-way" and to create "a visually oriented park-like atmosphere." It is the interpretation and effect of these provisions which are at issue in this appeal.
 
 
 4
 I-105 was formally opened in October 1993. Caltrans has denied all requests for billboard placements along I-105, because the entire freeway is classified as "landscaped." From May 1993 to January 1996, Kudler applied to Caltrans for permits authorizing him to place 13 outdoor advertising displays on private land adjacent to I-105. Caltrans denied each of his permit applications. The locations at which Kudler sought to erect the billboards were adjacent to unplanted sections of I-105 greater than 200 feet in length on elevated concrete and steel highway overcrossings.[3] Kudler also requested that Caltrans reclassify as "non-landscaped" each of the segments of the freeway along which he sought permission to erect billboards. Caltrans likewise denied this request pursuant to the settlement agreement.
 
 
 5
 Kudler filed an action in the Los Angeles Superior Court seeking peremptory writs of mandate to require Caltrans to reclassify sections of the freeway as non-landscaped and to provide him with permits to place billboards along those sections. Kudler contended that, by refusing to issue the requested permits, Caltrans had violated the COAA and the regulations promulgated thereunder, Cal.Code Regs. tit. 4, §§ 2240, et seq. (Barclays 1997). Those regulations specify the general criteria by which freeways are classified as "landscaped." Kudler further argued that Caltrans was required to issue him permits because he planned to erect billboards only in significant "gaps" of over 200 feet in landscaping along the freeway, to which, he argued, because of implementing regulations promulgated by Caltrans, COAA's prohibition against billboards on landscaped freeways did not apply.
 
 
 6
 Caltrans argued that COAA regulations expressly provide that "the provisions set forth in this subchapter are cumulative to all other laws and regulations controlling outdoor advertising displays." Cal.Code Regs. tit. 4, § 2500(b). Caltrans contended that the Consent Decree and EIS, together, constitute an "other law" controlling outdoor advertising displays. Caltrans also issued an emergency regulation on June 13, 1996, amending § 2511, expressly clarifying that "[t]he continuous planting requirement shall not apply to the Glenn Anderson Freeway, formerly known as the Century Freeway (I-105 in Los Angeles County)." However, this emergency regulation expired on November 22, 1996.
 
 
 7
 On July 12, 1996, Judge Robert O'Brien of the Los Angeles Superior Court issued a Peremptory Writ of Mandate, ordering Caltrans to issue permits to Kudler for the construction of his 13 proposed outdoor advertising displays and to reclassify the sections of I-105 adjacent to Kudler's proposed displays as not being a "landscaped freeway" within the meaning of the COAA.
 
 
 8
 On July 23, 1996, the plaintiffs in Keith v. Volpe filed with Judge Harry Pregerson[4] in district court, an Ex Parte Application for Order to Show Cause Why Injunction to Enforce Consent Decree Should Not Issue and For Temporary Restraining Order. Subsequent to briefing and a hearing on the Order to Show Cause where non-party Kudler participated, Judge Pregerson ruled that the Consent Decree's provision designating I-105 as a "landscaped freeway," prohibited the placement of billboards anywhere along the freeway, and granted Caltrans' request for a preliminary injunction on October 2, 1996. His order reads in material part:
 
 
 9
 The California Department of Transportation, Gary W. Bush, James W. Van Loben Sels, their officers, agents, servants, employees, and attorneys and all those in active concert or participation with each of them are hereby prohibited from issuing any permit to Robert L. Kudler that would allow him to place any billboard or other outdoor advertising displays along the I-105 freeway, including permits to erect his Proposed Displays 2,3,6,7,8,9,10,11,12 and 13.
 
 
 10
 Judge Pregerson emphasized that the state court erred because it:
 
 
 11
 overlooked the history of this litigation; the intentions of the parties; the important federal policies vindicated by the Amended Decree; and the aesthetic provisions of the Final EIS which are an integral part of the Amended Decree. These oversights explain why the state court incorrectly read the COAA regulations as obligating Caltrans to issue billboard permits to Kudler for sites along the elevated sections of the freeway where gaps in vegetative planting exceeded 200 feet in length.
 
 
 12
 Non-party Kudler timely appealed from this decision.
 
 II
 
 13
 As a threshold matter, we consider whether we have subject matter jurisdiction and, relatedly, whether the parties have standing to bring this action both in the first instance and in the instant appeal.
 
 
 14
 * Kudler argues that the district court did not have subject matter jurisdiction to issue the injunction. We disagree. First, the All Writs Act, 28 U.S.C. § 1651, empowers the federal courts to enjoin state proceedings that interfere, derogate, or conflict with federal judgments, orders, or settlements. In SEC v. G.C. George Securities, Inc., 637 F.2d 685, 687-88 (9th Cir.1981), this court held that the district court could enjoin state administrative proceedings raising issues already settled in a federal court settlement agreement. See also Clinton v. United States, 297 F.2d 899 (9th Cir.1961), cert. denied, 369 U.S. 856, 82 S.Ct. 944, 8 L.Ed.2d 14 (1962) (enjoining re-litigation in a state court proceeding of issues already decided in federal judgment). Second, the Consent Decree itself provides the district court with continuing jurisdiction to enforce the settlement between the Keith v. Volpe parties, including Caltrans. It states in material part:
 
 
 15
 If the terms of this Amended Decree are not complied with by any party, then any party may apply to this Court for appropriate relief. This court shall issue an injunction to enforce any terms of this Amended Decree only as a last resort remedy and only when no other remedy would reasonably assure compliance with a significant term.
 
 
 16
 Consent Decree at 15-16.
 
 
 17
 We conclude that the district court did have subject matter jurisdiction to enforce the terms of the settlement agreement.
 
 B
 
 18
 Article III, § 2, of the United States Constitution limits federal courts to the decision of "Cases" or "Controversies." Standing to sue or to defend is an aspect of the case or controversy requirement. Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-62, 112 S.Ct. 2130, 2135-37, 119 L.Ed.2d 351 (1992); Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 472-73, 102 S.Ct. 752, 758-59, 70 L.Ed.2d 700 (1982). "The standing Article III requires must be met by persons seeking appellate review, just as it must be met by persons appearing in courts of first instance. The decision to seek review is not to be placed in the hands of concerned bystanders, persons who would seize it as a vehicle for the vindication of value interests." Arizonans for Official English v. Arizona, --- U.S. ----, ----, 117 S.Ct. 1055, 1067, 137 L.Ed.2d 170 (1997) (internal citations and quotations omitted).
 
 
 19
 Because Hall & Associates--"Attorneys for Plaintiffs-Appellees"--have refused (until recently) to identify whom they represent, Kudler argues that there was no justiciable "case or controversy" before the district court. This court requested Hall & Associates to disclose as threshold matter the specific individuals and organizations who authorized filing this action in district court and the present appeal. The named plaintiffs in the original Keith v. Volpe litigation in 1972 were Ralph W. and Esther May Keith, Harold E. and Edith W. Grady, Harlow and Virginia Seel, James B. and Helen M. Gillespie, the NAACP, the Sierra Club, the Environmental Defense Fund, and the Freeway Fighters.[5] Counsel maintains that it is "still in contact" with Esther Keith[6] and Helen Gillespie; the other individuals may have died or moved out of the corridor area. The motion for a preliminary injunction in this case was brought in district court by the Sierra Club, through its Vice President, Elden Hughes, who also authorized the defense of the court's order in this appeal. Because there is at least one identifiable party in this case, we thus conclude that there is a justiciable "case or controversy."
 
 
 20
 We next determine whether Kudler, who is a non-party to the action, has standing to bring this appeal. This court permits non-parties to "appeal a district court order where: (1) the appellant participated in the district court proceedings even though not a party, and; (2) the equities of the case weigh in favor of hearing the appeal." U.S. v. Badger, 930 F.2d 754, 756 (9th Cir.1991) (internal citation omitted).[7] As for the first requirement, Kudler responded to the Order to Show Cause, at the district court's request, by filing a Memorandum of Points and Authorities and participating in oral argument. Secondly, the equities clearly weigh in favor of hearing this appeal. "[T]he equities supporting a nonparty's right to appeal ... are especially significant where [a party] has haled the nonparty into the proceeding against his will, and then has attempted to thwart the nonparty's right to appeal by arguing that he lacks standing." SEC v. Wencke, 783 F.2d 829, 834 (9th Cir.1986); accord Badger, 930 F.2d at 756.
 
 
 21
 We conclude that Kudler has standing.
 
 III
 
 22
 As for the merits in this appeal, we first determine whether the district court erred by holding that the Consent Decree and the EIS, together, prohibit the placement of outdoor advertising displays adjacent to I-105. Kudler maintains no such prohibition appears in the "plain" language of the settlement agreement, and declarations of persons who executed it attest that they never intended to address that subject at all. Kudler's argument on this issue is unavailing for several reasons.
 
 
 23
 First, the Consent Decree allowed construction of I-105 to continue in exchange for environmental, housing, transportation and employment mitigation measures. One important mitigating measure discussed by the parties involved the negative aesthetic effects of the freeway on motorists and surrounding communities. The Consent Decree itself ordered that "[t]he I-105 shall be constructed as a landscaped freeway." Section 5.9 of the EIS, entitled "Aesthetics and Amenities," provided that the freeway should be fully landscaped, in part "to shield undesirable visual elements of the project," to make the freeway in "visual harmony with the communities along the right-of-way" and to create "a visually oriented park-like atmosphere."
 
 
 24
 According to California law, in 1981 and at the present time, a landscaped freeway is one "improved by the planting at least on one side of the freeway right-of-way of lawns, trees, shrubs, flowers or other ornamental vegetation." Cal. Bus. & Prof.Code § 5216. California law further provides that "no advertising display shall be placed or maintained on property adjacent to a section of a freeway which has been landscaped if the advertising display is designed to be viewed primarily by persons traveling on the main-traveled way of the landscaped freeway." Id. § 5440.
 
 
 25
 Second, the parties who negotiated and drafted the Consent Decree maintain that the landscaping provision implemented the mitigation measures identified in the EIS that were designed to minimize the freeway's adverse visual impact on the surrounding neighborhoods by preventing the erection of billboards that might otherwise be built for viewing from the freeway. Both sides as well as the district judge, who has presided over this case for 25 years, agree that this language was "intended to have the effect [of] precluding all new billboards within the I-105 project," and further that the "landscaped freeway" requirement was specifically intended to cover the entire length of the freeway "including viaducts and bridges without exception." Caltrans' legal counsel, who over the years was involved in interpreting the decree for purposes of its implementation, also agreed that the Consent Decree's landscaping requirements were specifically intended to prevent billboards from being erected along the entire freeway.[8]
 
 
 26
 Even before construction and planting of the freeway was completed, Caltrans considered I-105 to be landscaped and denied outdoor advertising permits on that basis to all. Correspondence dated September 23, 1993 from Ronald W. Beals, Gannett's vice president and legal counsel, to Caltrans' chief legal counsel, for instance, highlights the common understanding by prospective advertisers concerning the "landscaped freeway" provision:
 
 
 27
 At least one of the Plaintiffs (probably the Sierra Club, but perhaps the Environmental Defense Fund) had raised the question of whether billboards would be allowed along the Century Freeway. The Department agreed they would not, and this is part of the Final EIS and the Decree (billboards not being allowed along a landscaped freeway)....
 
 
 28
 We conclude that substantial evidence supports the district court's determination that the Consent Decree's designation of I-105 as a "landscaped freeway" by its terms purportedly prohibits erection of billboards along its entire length.
 
 IV
 
 29
 We next determine whether a contractual consent decree[9] entered by a federal district court can override valid state laws regulating outdoor advertising that are not in conflict with any federal law. The state law in question here is the California Outdoor Advertising Act which governs the placing of all outdoor advertising displays that are within 660 feet from the edge of, and visible from, interstate highways and primary highways located in California. Cal. Bus. & Prof.Code § 5271; see also id. §§ 5209, 5215, 5220-22, 5224-25 (defining various terms). Pursuant to the Act and its regulations, no one may place any outdoor advertising display within areas governed by the Act without first obtaining a written permit from Caltrans. If a permit application is in full compliance with the Act, and provided the proposed advertising display will not violate any other provision of state law, Caltrans must issue a permit to the applicant. Id. § 5358.
 
 
 30
 Kudler contends that, by refusing to issue the requested billboard permits, Caltrans has violated the COAA and the regulations promulgated thereunder. Those regulations specify the general criteria by which freeways are classified as "landscaped." Section 2511 provides in material part:
 
 
 31
 [t]o be classified as a landscaped freeway, a continuous planting segment measured parallel from the freeway center line must be at least 1,000 feet in length.... If a continuous planting segment as described above is followed by a gap of 200 feet or less and adjoins continuous planting which is at least 500 feet in length, the designation "landscaped freeway" will apply to the total length of the continuous planting segment, the 'gap' and the continuous planting.
 
 
 32
 Kudler argues that, pursuant to § 2511, Caltrans was required to issue him permits because he planned to erect billboards only in significant "gaps" of over 200 feet in landscaping along the freeway, to which, he argued, because of implementing regulations promulgated by Caltrans, COAA's prohibition against billboards on landscaped freeways did not apply. We leave resolution of this issue of California law to the California courts.
 
 
 33
 We are mindful of the United States Supreme Court's admonition that a "federal court is more than a recorder of contracts from whom parties can purchase injunctions; it is an organ of government constituted to make judicial decisions." Local Number 93, Int'l Ass'n of Firefighters v. City of Cleveland, 478 U.S. 501, 525, 106 S.Ct. 3063, 3076, 92 L.Ed.2d 405 (1986) (internal citation and quotations omitted). The district court did not confront the fact that its interpretation of the Consent Decree and its resulting injunction had the effect of overriding California's valid outdoor advertising law. Put simply, state law, as interpreted by the California courts, will govern whether Kudler may erect his advertising displays.[10] The district court correctly interpreted the Consent Decree as purportedly banning the displays but it ultimately concluded, improperly, that the decree prevailed over state law.
 
 
 34
 The district court, in the case at hand, simply lost sight of its limitations. Under the Constitution, the district court could not supersede California's law unless it conflicts with any federal law. U.S. Const. amend X; see, e.g., U.S. Term Limits, Inc. v. Thornton, 514 U.S. 779, 800-02, 115 S.Ct. 1842, 1854, 131 L.Ed.2d 881 (1995). Here, there simply was no federal law to justify the district court's superseding of state law. Although the court referred to "the important federal policies vindicated by the [Consent] Decree," the court failed to identify a single federal law that would justify its overriding state law. The best the district court could do was to rely vaguely on the "policy concerns" and "aesthetic concerns" of the National Environmental Policy Act of 1969 ("NEPA"), 42 U.S.C. §§ 4321-4347. Nevertheless, to the extent that the district court's injunction superseded California's outdoor advertising law based on the perceived "policies" and "mandate" of NEPA, the court erred.
 
 
 35
 NEPA imposes only procedural requirements, Vermont Yankee Nuclear Power v. Natural Resources Defense Council, Inc., 435 U.S. 519, 558, 98 S.Ct. 1197, 1219, 55 L.Ed.2d 460 (1978), it does not dictate a substantive environmental result, Marsh v. Oregon Natural Resources Council, 490 U.S. 360, 371, 109 S.Ct. 1851, 1858, 104 L.Ed.2d 377 (1989).
 
 
 36
 Salmon River Concerned Citizens v. Robertson, 32 F.3d 1346, 1355-56 (9th Cir.1994). The district court erred in basing its holding on NEPA's generalized purpose of assuring for all Americans, "safe, healthful, productive, and esthetically and culturally pleasing surroundings." Keith v. Volpe, 965 F.Supp. 1337, 1344 (C.D. Cal.1986) (quoting 42 U.S.C. § 4331(b)(2)) (internal quotations omitted).
 
 
 37
 To the extent the parties to the Consent Decree intended to ban advertising displays next to I-105, they could not agree to terms which would exceed their authority and supplant state law. See Washington v. Penwell, 700 F.2d 570, 573 (9th Cir.1983) (holding that "the contract underlying the consent decree was void to the extent that it exceeded defendants' authority"); see also Perkins v. City of Chicago Heights, 47 F.3d 212, 216 (7th Cir.1995) (holding that parties to a consent decree "cannot consent to do something together that they lack the power to do individually"); Kasper v. Board of Election Comm'rs, 814 F.2d 332, 341 (7th Cir.1987) ("A consent decree is not a method by which state agencies may liberate themselves from the statutes enacted by the legislature that created them."); Dunn v. Carey, 808 F.2d 555, 559-60 (7th Cir.1986) ("Because a consent decree's force comes from agreement rather than positive law, the decree depends on the parties' authority to give assent.").
 
 
 38
 We conclude that the doctrine of federalism forbids the district court's overriding of California's valid laws governing outdoor advertising and the preliminary injunction must be vacated accordingly.
 
 V
 
 39
 We agree with the district court that the Consent Decree did indeed provide that I-105 was a "landscaped freeway" which purportedly prohibits the placement of billboards or other outdoor advertising displays. Nevertheless, the district court's enforcement of the contractual consent decree cannot be used as an enforceable substantive declaration of Caltrans's obligations under California law. We hold that the district court has no power to order Caltrans to defeat Kudler's rights, if any, under state law as finally interpreted by the California courts.[11] The order granting the preliminary injunction is
 
 
 40
 REVERSED.
 
 
 
 [1]
 I-105 has also been called the "Century Freeway" or the "Glenn Anderson Freeway."
 
 
 [2]
 The construction of the freeway has been the subject of numerous trials, Keith v. Volpe, 960 F.Supp. 1448 (C.D.Cal.1997); 965 F.Supp. 1337 (C.D.Cal.1996); 644 F.Supp. 1312 (C.D.Cal.1986); 643 F.Supp. 37 (C.D.Cal.1985); 618 F.Supp. 1132 (C.D.Cal.1985); 501 F.Supp. 403 (C.D.Cal.1980); 352 F.Supp. 1324 (C.D.Cal.1972); and appeals, Keith v. Volpe, 858 F.2d 467 (9th Cir.1988); 833 F.2d 850 (9th Cir.1987); 784 F.2d 1457 (9th Cir.1986); Keith v. California Highway Comm'n, 506 F.2d 696 (9th Cir.1974) (en banc), cert. denied, 420 U.S. 908, 95 S.Ct. 826, 42 L.Ed.2d 837 (1975). We draw from these dispositions for the facts and prior proceedings
 
 
 [3]
 The proposed outdoor advertising displays were to be placed (1) 40 feet east of West Alameda Street on the north side of I-105; (2) 600 feet east of West Alameda Street on the north side of I-105; (3) 53 feet east of Watts Avenue on the north side of I-105; (4) 3 feet east of Willowbrook Avenue on the south side of I-105; (5) 120 feet east of Gorman Avenue on the south side of I-105; (6) 15 feet west of Long Beach Boulevard on the south side of I-105; (7) 30 feet east of Long Beach Boulevard on the south side of I-105; (8) 471 feet east of Westec Way on the south side of I-105; (9) 971 feet east of Westec Way on the south side of I-105; (10) 530 feet west of Westec Way on the south side of I-105; (11) 29 feet west of Westec Way on the south side of I-105; (12) 987 feet west of Inglewood Avenue on the south side of I-105; and (13) 900 feet of State Street on the north side of I-105
 
 
 [4]
 This action has been before Judge Pregerson since its initial filing in 1972. Following his elevation to the Ninth Circuit Court of Appeals in 1979, Judge Pregerson has continued to preside over this litigation as a Circuit Judge sitting by designation on the District Court for the Central District of California
 
 
 [5]
 Earl Wright, Rose Hall, Pablo Zapeta and Minnie Hadley were added by the district court's July 24, 1985 order
 
 
 [6]
 However, it now appears that Esther Keith died over three years ago, on May 30, 1994. Several weeks after oral argument, Kudler's counsel (not Keith's) filed a motion to notice which we granted, accompanied by a certified death certificate
 
 
 [7]
 Because Kudler was haled into this action by the district court over his objections, this case is distinguishable from Marino v. Ortiz, 484 U.S. 301, 108 S.Ct. 586, 98 L.Ed.2d 629 (1988) (holding that petitioners did not have standing to appeal from the consent decree because they were not parties to the litigation giving rise to the decree)
 
 
 [8]
 Kudler offers three declarations from attorneys--Ray A. Barnhart, Robert M. Garrick and Kenneth L. Nelson--who claim that a prohibition on billboards was never the intent of the parties. However, none of these attorneys was involved directly with the negotiation of the "landscaped freeway" provision. Barnhart began working for the Federal Highway Administration two years after the provision was agreed to. Garrick took part in only two of the decree's negotiation sessions: replacement housing and noise abatement. Finally, Nelson did not participate in any of the negotiation sessions
 
 
 [9]
 A consent decree binds only the consenting parties. See, e.g., United States v. Ward Baking Co., 376 U.S. 327, 84 S.Ct. 763, 11 L.Ed.2d 743 (1964); Hughes v. United States, 342 U.S. 353, 72 S.Ct. 306, 96 L.Ed. 394 (1952)
 
 
 [10]
 Further state court proceedings following the Los Angeles Superior Court's mandate in favor of Kudler have been stayed pending our decision in this case
 
 
 [11]
 Because we reverse the district court's grant of preliminary injunction, we do not reach Kudler's arguments that: (1) the district court's injunction of a state court order violates the Anti-Injunction Act, 28 U.S.C. § 2283; and (2) the Consent Decree cannot deprive a non-party of his vested rights in the permits