UNITED STATES of America,
Plaintiff–Appellee,

v.

ALPINE LAND & RESERVOIR
COMPANY, Defendant.

In the Matter of State Engineer Decision Regarding Application 61995 Churchill County, a political subdivision of the State of Nevada, Petitioner–Appellant,

v.

R. Michael Turnipseed, State Engineer, State of Nevada, Department of Conservation and Natural Resources, Division of Water Resources, Respondent–Appellee.

United States of America,
Plaintiff–Appellee,

v.

Orr Water Ditch Co., et
al., Defendants.

In the Matter of State Engineer Decision Regarding Application 61995 Churchill County, a political subdivision of the State of Nevada, Petitioner–Appellant,

v.

R. Michael Turnipseed, State Engineer, State of Nevada, Department of Conservation and Natural Resources, Division of Water Resources, Respondent–Appellee.

Nos. 97–17011, 97–17016.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 2, 1998

Decided April 8, 1999.

Richard G. Campbell, Jr., Campbell & Stone, Reno, Nevada, for the petitioner-appellant.

Frankie Sue Del Papa, Attorney General of Nevada, David C. Creekman, Deputy Attorney General, Carson City, Nevada, for the respondent-appellee.

Lois J. Schiffer, Assistant Attorney General, Stephen M. Macfarlane, Trial Attorney, Environment & Natural Resources Division, U.S. Department of Justice, Sacramento, California, for the plaintiff-appellee.

Steven D. King, Assistant City Attorney, Fallon, Nevada, for amicus curiae City of Fallon.

Gordon H. DePaoli, Woodburn & Wedge, Reno, Nevada, for amicus curiae Sierra Pacific Power Co.

Robert S. Pelcyger, Fredericks, Pelcyger, Hester & White, L.L.C., Louisville, Colorado, for amicus curiae Pyramid Lake Paiute Tribe of Indians.

Donald L. Christensen, Deputy City Attorney, Reno, Nevada, for amici curiae Cities of Reno and Sparks, Nevada.

Before: BETTY B. FLETCHER, A. WALLACE TASHIMA, and M. MARGARET McKEOWN, Circuit Judges.

TASHIMA, Circuit Judge:

Churchill County appealed to a Nevada state court the decision of the Nevada State Engineer, R. Michael Turnipseed, granting a water rights transfer application to the United States Fish and Wildlife Service. The United States District Court for the District of Nevada enjoined the state court proceeding because the state proceeding interfered with the district court's exclusive jurisdiction to hear appeals regarding the water rights at issue, rights that had been originally adjudicated by the district court. Churchill County appeals, contending that the district court erred in issuing the injunction. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## I.

At the turn of this century, the Secretary of the Interior, acting pursuant to congressional authorization, withdrew from the public domain a large tract of land in western Nevada. This land became the Newlands Reclamation Project, a project diverting and storing water from the Truckee and Carson Rivers in a reservoir behind Lahontan Dam and distributing it downstream by means of canals for irrigation and related uses. *See Nevada v. United States*, 463 U.S. 110, 113–18, 103 S.Ct. 2906, 77 L.Ed.2d 509 (1983) (giving overview of history and geography of the Truckee River and Carson River basins). In 1913, the United States began quiet title proceedings in the United States District Court for the District of Nevada to adjudicate the water rights of all users, including the Newlands Reclamation Project, to the Truckee River. A final decree was entered in 1944, known as the Orr Ditch Decree. The United States brought a similar proceeding for the Carson River in the same federal court in 1925, which resulted in 1980 in the Alpine Decree. This appeal involves water rights owned by the United States, specifically, the United States Fish and Wildlife Service ("Fish and Wildlife Service"), in the New-

lands Reclamation Project in Churchill County, Nevada. Applications to change the place of diversion or the manner or place of use of water rights adjudicated under these Decrees are directed in the first instance to the State Engineer of Nevada ("State Engineer"). *See United States v. Orr Water Ditch Co.,* 914 F.2d 1302, 1311 (9th Cir.1990); *United States v. Alpine Land & Reservoir Co.,* 697 F.2d 851, 860 (9th Cir.1983) (*"Alpine I "*).

·On April 4, 1996, the Fish and Wildlife Service filed two applications with the State Engineer to change the place and manner of use of the water rights it had purchased from other users and that had been adjudicated under the Alpine and Orr Ditch Decrees. Under the Fish and Wildlife Service's application, the water was to be transferred from the Newlands Reclamation Project to the Lahontan Valley Wetlands and used for recreation, wildlife, and maintaining the wetlands. Churchill County filed a protest to each application with the State Engineer, asserting that the transfer of water would deplete Churchill County's groundwater supply, harm its tax base, and create a dust hazard. On October 30, 1996, the State Engineer conducted a public hearing and found that the transfer would result in little if any effect on the groundwater supply, negligible tax consequences, and no threat of a dust hazard. Accordingly, the State Engineer granted one of the Fish and Wildlife Service's applications.[1]

In November 1996, Churchill County filed an appeal of the State Engineer's

ruling in the Third Judicial District Court of the State of Nevada. The State Engineer filed a motion to dismiss for lack of jurisdiction, which the court denied. The Nevada court narrowly construed the relevant federal court precedent, which held that the federal district court exercises appellate jurisdiction over decisions of the State Engineer that involve federally decreed water rights. The state court further held that Nevada Revised Statute § 533.450[2] applies only to water rights decrees entered by state courts.

On August 11, 1997, the State Engineer filed a motion in the United States District Court for the District of Nevada asking the court to enjoin, pursuant to 28 U.S.C. §§ 1651 and 2283, further proceedings in the state court. The United States, in its capacity as plaintiff in the Alpine and Orr Ditch actions, filed a brief in support of the State Engineer's motion. While the motion was pending, Churchill County filed a motion in the state court to enjoin the federal proceeding, which the state court granted. On September 17, 1997, in identical orders under the Alpine and Orr Ditch Decrees, the federal district court issued its own injunction.[3]

Churchill County contends that the district court erred in enjoining the state proceeding because the district court does not have exclusive jurisdiction over all of the State Engineer's rulings regarding waters of the Carson and Truckee Rivers. According to Churchill County, the district court's jurisdiction is limited to decisions that implicate federal interests in the oper-

---

**1.** As a result of the State Engineer's decision to grant one of its applications, the Fish and Wildlife Service withdrew its second application.

**2.** Section 533.450 provides that "on stream systems where a decree of court has been entered, the [appeal of the decision of the State Engineer] shall be initiated in the court that entered the decree." Nev.Rev.Stat. § 533.450 (1997).

**3.** The injunction reads:
THE COURT ORDERS that the Third Judicial District Court of Nevada's Order en-

joining State Engineer R. Michael Turnipseed from proceeding in this action and enjoining this Court from proceeding in this action is hereby held to be VOID as being entered without jurisdiction and in derogation of this Court's exclusive jurisdiction over the water rights at issue;
... The Court ENJOINS further proceedings in Case No. 23656, Department No. II, in the Third Judicial District Court of the State of Nevada in and for the County of Churchill.
(Emphasis in original).

ation of the Newlands Reclamation Project. Churchill County also argues that the district court improperly reviewed the decision of the Nevada state court.

## II.

We review the existence of subject matter jurisdiction de novo. *See Galt G/S v. JSS Scandinavia,* 142 F.3d 1150, 1153 (9th Cir.1998). The question of whether the district court could enjoin the state court proceeding under the Anti–Injunction Act is also reviewed de novo. *See Quackenbush v. Allstate Ins. Co.,* 121 F.3d 1372, 1377 (9th Cir.1997). However, the district court's decision to issue an injunction that comes within an exception to the Act is reviewed for an abuse of discretion. *See id.* "A district court abuses its discretion when it rests its conclusions on clearly erroneous factual findings or on incorrect legal standards." *Id.*

## III.

### A. JURISDICTION

Churchill County argues that the district court did not have jurisdiction to enjoin the state court proceeding. We disagree. We conclude that the district court's jurisdiction over disputes arising under the Alpine and Orr Ditch Decrees is both continuing and exclusive.

#### 1. Continuing Jurisdiction

We have consistently interpreted both the Alpine and Orr Ditch Decrees to provide for federal district court review of decisions of the State Engineer regarding applications to change the place of diversion or manner or place of use of water rights derived from the Alpine and Orr Ditch Decrees.

The Alpine Decree expressly provides the district court with continuing jurisdiction over transfer applications:

Applications for changes in the place of diversion, place of use or manner of use as to Nevada shall be directed to the State Engineer. Any person feeling himself aggrieved by any order or decision of the State Engineer on these mat-

ters *may appeal that decision or order to this Court.*

(Emphasis added.)

This jurisdictional arrangement has been repeatedly upheld. *See United States v. Alpine Land & Reservoir Co.,* 878 F.2d 1217, 1219 n. 2 (9th Cir.1989) ("*Alpine II*") ("Pursuant to the Alpine decree, the federal district court acts as an appellate court for decisions of the state Engineer."); *Alpine I,* 697 F.2d at 858; *United States v. Alpine Land & Reservoir Co.,* 919 F.Supp. 1470, 1474 (D.Nev.1996) ("*Aqueduct I*").

We have also interpreted the Orr Ditch Decree as providing for continuing federal court jurisdiction over appeals from decisions of the State Engineer arising under that Decree. *See Orr Water,* 914 F.2d at 1308–09 & n. 8. For change applications, the Orr Ditch Decree instructs that

[p]ersons whose rights are adjudicated hereby, their successors or assigns, shall be entitled to change *in the manner provided by law* the point of diversion and the place, means, manner or purpose of use of the waters to which they are so entitled or any part thereof, so far as they may do so without injury to the rights of other persons whose rights are fixed by this decree.

(Emphasis added.)

Although the Orr Ditch Decree does not expressly provide for federal district court review of the decisions of the State Engineer, we have interpreted Nevada law, which provides for jurisdiction of appeals from decisions of the State Engineer "in the court that entered the decree," as providing for federal court review under the Orr Ditch Decree. *Orr Water,* 914 F.2d at 1309 n. 8 (quoting Nev.Rev.Stat. § 533.450(1)). "Nevada law thus supports the system adopted by the federal courts for appeals of Engineer decisions on federal-court-decreed water rights." *Id.*

We must determine whether the Fish and Wildlife Service's transfer application comes within the ambit of the jurisdiction

reserved in the Decrees. Churchill County argues that the transfer application does not because the jurisdiction retained by the Alpine Decree is "highly extraordinary" and limited to cases involving federal interests in the Newlands Reclamation Project. Even assuming, *arguendo,* that the transfer application at issue is unrelated to the United States' interest in the Newlands Reclamation Project,[4] we reject Churchill County's construction of the Decrees as too narrow in light of this circuit's precedent.

Churchill County's belief that federal court jurisdiction must be based on the existence of a federal interest stems from language in *Alpine I* and *Alpine II.* In particular, in *Alpine I,* this court stated that "[t]he United States is not concerned with the routine change application, but with the possibility that federal interests will be ignored by the Nevada State Engineer." *Alpine I,* 697 F.2d at 858. The *Alpine I* court found that district court appellate jurisdiction over transfer applications combined with the United States' ability to participate in proceedings before the State Engineer would "provide full vindication of the admitted federal interests in the operation of federal reclamation projects." *Id.; see also Alpine II,* 878 F.2d at 1219 n. 2 (quoting the same language).

Reasons for providing federal court jurisdiction, however, are not the same as prerequisites for jurisdiction. The *Alpine I* court addressed a dispute over whether applications for change in the place of diversion or manner or place of use should be directed to the State Engineer at all. The language cited above responds to a concern that federal interests might be ignored. The *Alpine I* court did not say

that federal court jurisdiction would lie only when a federal interest is implicated. *See also Aqueduct I,* 919 F.Supp. at 1474 (stating broadly that "this Court acts as an appellate court for decisions of the State Engineer with regard to federally decreed water rights").

Churchill County also points to this court's statement in *Alpine II* that district court appellate jurisdiction over the decisions of the State Engineer "is highly extraordinary." *Alpine II,* 878 F.2d at 1219 n. 2. This language, however, does not mean that the district court may exercise jurisdiction only in rare instances. As evidenced by *Alpine II* 's citations to the cases that gave rise to the *Rooker–Feldman* doctrine, *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), and *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), the *Alpine II* court was referring to the extraordinary nature of the district court's appellate jurisdiction under the Alpine Decree in relation to the doctrine that district courts may not exercise appellate jurisdiction over state court rulings. The *Alpine II* court expressly noted that, in spite of its extraordinary nature, "[w]e specifically approved of this jurisdictional arrangement in [*Alpine I* ]." *Alpine II,* 878 F.2d at 1219 n. 2.

■ Thus, we find that the transfer application at issue comes within the scope of jurisdiction intended by the Alpine and Orr Ditch Decrees.[5]

**2. Exclusive Jurisdiction**

■ Not only is the district court's jurisdiction continuing, it is exclusive. The district court held that it had exclusive

4. We express no view on this subject.

5. We also reject Churchill County's argument that the district court lacked jurisdiction because the State Engineer cannot satisfy the test for supplemental jurisdiction under 28 U.S.C. § 1367. Supplemental jurisdiction under § 1367 is distinct from the equitable doctrine of ancillary jurisdiction, which allows a

court to adjudicate related claims "to manage its proceedings, vindicate its authority, and effectuate its decrees." *Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 380, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). The latter is at work here. So long as the dispute in this case is related to the district court's earlier Decrees, the district court retains jurisdiction to adjudicate the dispute.

jurisdiction because the Alpine and Orr Ditch matters are *in rem* actions and the district court gained jurisdiction over the *res* first. We find the district court's jurisdiction to be exclusive for two reasons.

First, the district court implicitly retained exclusive jurisdiction in the Alpine and Orr Ditch Decrees. As discussed above, the Alpine Decree expressly reserves appellate jurisdiction over decisions of the State Engineer for the district court, and the Orr Ditch Decree has been similarly interpreted. Neither the Decrees nor the cases interpreting these Decrees mention concurrent jurisdiction with the Nevada state courts. Furthermore, to construe these Decrees so that the district court does not retain exclusive jurisdiction would render the retention of jurisdiction a nullity. We have explained, in the context of a settlement agreement, why retaining jurisdiction should be interpreted as retaining exclusive jurisdiction:

> The reason why exclusivity is inferred is that it would make no sense for the district court to retain jurisdiction to interpret and apply its own judgment to the future conduct contemplated by the judgment, yet have a state court construing what the federal court meant in the judgment. Such an arrangement would potentially frustrate the federal district court's purpose.

*Flanagan v. Arnaiz*, 143 F.3d 540, 545 (9th Cir.1998). The *Flanagan* court, of course, also noted that it did "not mean to exclude the possibility that in some circumstances, the words, context, or subsequent order of the federal court might show that retention of jurisdiction was not intended to be exclusive." *Id.* In light of the fact, however, that the Alpine and Orr Ditch Decrees were complex and comprehensive water adjudications for which conflicting federal and state constructions would be entirely unworkable, the district court's retention of jurisdiction was intended to be exclusive.

■ Second, the district court's jurisdiction is exclusive because its jurisdiction is best characterized as *in rem* jurisdiction.

Churchill County does not dispute the well-established proposition that the first court to gain jurisdiction over a *res* exercises exclusive jurisdiction over an action involving that *res*. *See, e.g., Kline v. Burke Constr. Co.*, 260 U.S. 226, 229, 43 S.Ct. 79, 67 L.Ed. 226 (1922); *Bergeron v. Loeb*, 100 Nev. 54, 675 P.2d 397, 400 (1984).

> [State and federal courts] do not belong to the same system, so far as their jurisdiction is concurrent; and although they co-exist in the same space, they are independent, and have no common superior. They exercise jurisdiction, it is true, within the same territory, but not in the same plane; and when one takes into its jurisdiction a specific thing, that *res* is as much withdrawn from the judicial power of the other, as if it had been carried physically into a different territorial sovereignty. To attempt to seize it by a foreign process is futile and void.

*Kline*, 260 U.S. at 229–230, 43 S.Ct. 79 (quoting *Covell v. Heyman*, 111 U.S. 176, 182, 4 S.Ct. 355, 28 L.Ed. 390 (1884)) (internal quotation marks omitted). Instead, Churchill County contends that the Nevada state court had exclusive jurisdiction because it asserted jurisdiction over the *res* before the district court, and therefore, it was the district court that was undermining the jurisdiction of the state court. We are not persuaded.

■ The actions that resulted in the Orr Ditch and Alpine Decrees are sufficiently analogous to *in rem* actions to provide the district court with exclusive jurisdiction. Nevada law treats water rights as real property. *See In re Filippini*, 66 Nev. 17, 202 P.2d 535, 537 (1949). Furthermore, the Supreme Court has "recognized that actions seeking the allocation of water essentially involve the disposition of property and are best conducted in unified proceedings." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 819, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) (treating the pending state court proceeding as an *in rem* action). The Supreme

Court has noted that, although equitable actions to quiet title are technically *in personam* actions, "water adjudications are more in the nature of *in rem* proceedings." *Nevada v. United States,* 463 U.S. 110, 143–44, 103 S.Ct. 2906, 77 L.Ed.2d 509 (1983) ("everyone involved in *Orr Ditch* contemplated a comprehensive adjudication of water rights"); *see also Alpine I,* 697 F.2d at 853 (noting that "[t]his litigation is a virtually comprehensive adjudication") (internal quotation marks omitted) (citation omitted).

The Nevada state court could not have exercised *in rem* jurisdiction first because the federal district court had already asserted jurisdiction over the water rights in question when it adjudicated the Alpine and Orr Ditch Decrees and because it continued to retain such jurisdiction.[6]

Therefore, because the district court retained exclusive jurisdiction and because the Decrees are properly analogized to *in rem* proceedings, the district court exercises exclusive jurisdiction over actions arising under these Decrees.

## B. PROPRIETY OF THE INJUNCTION

Churchill County contends that the district court did not need to enjoin the state court proceeding to protect what jurisdiction it does have. We find that the district court did not abuse its discretion in doing so.

### 1. The Anti–Injunction Act

 The Anti–Injunction Act, 28 U.S.C. § 2283, prohibits federal courts from enjoining state court proceedings unless one of three exceptions applies: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in

aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283 (1994). These three exceptions are to be construed narrowly, "resolv[ing] doubts in favor of letting the state action proceed." *Quackenbush,* 121 F.3d at 1378; *see also Atlantic Coast Line R.R. v. Brotherhood of Locomotive Eng'rs,* 398 U.S. 281, 297, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970) ("Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy."). "[T]he exceptions [to the Anti–Injunction Act] should not be enlarged by loose statutory construction." *Id.,* 398 U.S. at 287, 90 S.Ct. 1739.

The district court relied on the second exception that an injunction may issue "where necessary in aid of [the court's] jurisdiction." § 2283. The district court was correct to do so for two reasons.

 First, it has long been held that the first court to exercise jurisdiction over real property is entitled to enjoin proceedings in another court regarding that property. *See, e.g., Kline,* 260 U.S. at 229, 43 S.Ct. 79; *Bergeron,* 675 P.2d at 400.

It is settled that where a federal court has first acquired jurisdiction of the subject-matter of a cause, it may enjoin the parties from proceeding in a state court of concurrent jurisdiction where the effect of the action would be to defeat or impair the jurisdiction of the federal court. Where the action is *in rem* the effect is to draw to the federal court the possession or control, actual or potential, of the *res,* and the exercise by the state court of jurisdiction over the same *res* necessarily impairs, and may defeat, the jurisdiction of the federal court already attached.

---

**6.** The district court noted that Churchill County conceded that the federal district court was the first court to acquire jurisdiction over the water rights in question, a concession Churchill County disputes. The district court's reliance on this supposed concession did not control the result it

reached, however, because the district court found that it had gained jurisdiction over the water rights at issue when the Orr Ditch and Alpine cases were first filed in federal court. Therefore, whether there was ever such a concession is irrelevant for purposes of this appeal.

*Kline,* 260 U.S. at 229, 43 S.Ct. 79. Therefore, by definition, the state proceeding impairs the federal court's jurisdiction over this matter.[7]

Second, the "where necessary in aid of its jurisdiction" exception applies because the district court retained jurisdiction over the Orr Ditch and Alpine Decrees. In *Flanagan,* we held that the district court's retention of jurisdiction in a settlement agreement was sufficient to support its injunction against proceedings in state court. *See* 143 F.3d at 545–46. "Where the district court expressly retains jurisdiction to enforce a settlement agreement, and to resolve disputes that may arise under it, litigation in state court would pose a significant risk of frustrating the district court's jurisdiction over the consent judgment." *Id.* at 545 (internal quotation marks omitted) (citation omitted). Because the retention of jurisdiction to enforce water rights adjudications raises similar concerns, we conclude that the Anti–Injunction Act does not bar a federal court injunction in this case.[8]

### 2. The Decision to Issue the Injunction

■ Federal courts are empowered by the All Writs Act, 28 U.S.C. § 1651, to enjoin state court proceedings that interfere with federal judgments. *See Keith v. Volpe,* 118 F.3d 1386, 1390 (9th Cir.1997). As discussed above, the district court had exclusive jurisdiction over appeals from decisions of the State Engineer regarding water rights adjudicated under the Alpine

and Orr Ditch Decrees; its decision to issue the injunction fits within the "necessary in aid of" exception to the Anti–Injunction Act. In light of the foregoing, there are no grounds to conclude that the district court abused its discretion in enjoining the state court proceeding. "Although comity requires federal courts to exercise extreme caution in interfering with state litigation, federal courts have the power to do so when their jurisdiction is threatened." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1025 (9th Cir.1998). Moreover, Nevada has expressly provided that where a court decree governs water rights, a review of the State Engineer's decisions "shall be initiated in the court that entered the decree." Nev.Rev.Stat. § 533.450(1).

### C. DISTRICT COURT REVIEW OF STATE COURT INJUNCTION

■ Finally, Churchill County argues that the district court's order enjoining the Nevada state court proceeding amounted to direct federal district court review of a state court decision. Specifically, Churchill County objects to the district court's ruling that the state court's injunction is void for lack of jurisdiction and that the state court misinterpreted a state statute.

■ Under 28 U.S.C. § 1257, the Supreme Court has jurisdiction to review certain state court decisions. Under the *Rooker–Feldman* doctrine, the lower federal courts do not have this authority. *See Feldman,* 460 U.S. at 476, 103 S.Ct. 1303; *Rooker,* 263 U.S. at 416, 44 S.Ct. 149.

---

7. Churchill County contends that the decision of *Landi v. Phelps,* 740 F.2d 710 (9th Cir. 1984), which held that a federal court may not enjoin a state court proceeding merely because the federal court had exclusive jurisdiction over the matter, deprived the district court of authority to enjoin the state proceeding. *See id.* at 713. However, *Landi* involves neither an *in rem* proceeding nor a situation where the federal court retained jurisdiction. It is these factors that bring the instant case within the "when necessary in aid of its jurisdiction" exception.

[I]f the District Court does have jurisdiction, it is not enough that the requested

injunction is related to that jurisdiction, but it must be *"necessary in aid of"* that jurisdiction.... [S]ome federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case.

*Atlantic Coast,* 398 U.S. at 295, 90 S.Ct. 1739 (emphasis in original).

8. Because we agree with the district court that its injunction was proper under the "necessary in aid of its jurisdiction" exception, we offer no opinion on whether any other exceptions to the Anti–Injunction Act might apply.

Churchill County is mistaken, however, in characterizing the district court's actions as appellate review of a state court judgment. Although the district court opined that the state court had erred in interpreting a Nevada statute, the district court's decision amounted to a determination that it had exclusive jurisdiction over the matter at issue and that it needed to protect its exclusive jurisdiction. That is, the district court's decision rested on its own determination that it had exclusive jurisdiction, not on any error on the part of the state court in asserting jurisdiction.[9] If Churchill County's argument were to succeed, it would be impossible for a federal court to enjoin a state court proceeding, despite satisfying an exception to the Anti–Injunction Act, because the federal court would always be bound by the state court's determination of jurisdiction. Moreover, as discussed above, this circuit has expressly upheld the admittedly "highly extraordinary" scheme of having the federal district court exercise appellate review of the State Engineer's decisions in cases arising under the Alpine and Orr Ditch Decrees. *Alpine II*, 878 F.2d at 1219 n. 2. Because this scheme does not require federal court review of Nevada state court proceedings, it also does not implicate the *Rooker–Feldman* doctrine. Therefore, the district court did not run afoul of the *Rooker–Feldman* doctrine.

## IV.

The district court has continuing and exclusive jurisdiction to hear appeals from decisions of the Nevada State Engineer involving water rights adjudicated under the Alpine and Orr Ditch Decrees. The injunction at issue in this case was necessary to protect the district court's exclusive jurisdiction. Therefore, the district court did not abuse its discretion by enjoining the Nevada state court proceeding.

9. In fact, the district court's disagreement with the Nevada state court's interpretation of state law was ultimately irrelevant to the district court's decision because the district

Accordingly, the order of the district court is

**AFFIRMED.**

court found that a state statute cannot strip a federal court of exclusive jurisdiction over an *in rem* action.