529 A.2d 50

John P. Morris et al., Appellants *v.* Honorable W. Wilson Goode, Mayor of Philadelphia, et al., Appellees.

530

Argued December 10, 1986, before President Judge CRUMLISH, JR., Judges CRAIG, MACPHAIL, DOYLE, BARRY, COLINS and PALLADINO.

*Peter V. Marks, Sr.,* with him, *Bernard N. Katz, Meranze and Katz,* for appellants.

*Handsel B. Minyard,* City Solicitor, with him, *Richard L. Gold,* Chief Deputy City Solicitor, and *Eric H. Auerbach,* Chief Assistant City Solicitor, for appellees.

*Gary R. Leadbetter,* with him, *Donna M. Albani, Dilworth, Paxson, Kalish & Kauffman,* for intervenor appellee, Rollins Cablevision of Philadelphia, Inc.

OPINION BY JUDGE CRAIG, July 22, 1987:

Several Philadelphia City Council members and other taxpayers and residents of Philadelphia (plaintiffs)[1] appeal a Philadelphia Common Pleas Court order sustaining the preliminary objections of Mayor Wilson Goode, City Council President Joseph Coleman, other council members and city officials, and Rollins Cablevision of Philadelphia, Inc. (Rollins). We reverse and remand the case for further proceedings.

On November 14, 1982, the Mayor approved Ordinance No. 341, which was enacted by the city council pursuant to its powers under Section 2.2-200 of the Philadelphia Home Rule Charter. By this ordinance, city council awarded Rollins a cable television franchise for designated Area III of the city. Section 2 of Ordinance No. 341 provides, in pertinent part:

---

[1] Plaintiffs are John P. Morris, James E. Smith, William O'Farrell and Thomas P. Byron, who filed their equity complaint as individual Philadelphia taxpayers; Gwen Lindsey, Randolph Miller and Ronald Berry, as residents of the designated area to be franchised; and Leland M. Beloff, Joan L. Krawjewski, Francis Rafferty, Patricia A. Hughes and Brian J. O'Neill, council members who claimed to have been disenfranchised and prevented from exercising their voting duties by the council president's action.

> The award of this franchise is subject to all of the terms of the Franchising Ordinance. . . . More particularly, the award is subject to the execution, and *ratification by Council resolution,* of a formal franchise agreement setting forth the terms and conditions for the operation of the Area III CATV system between ROLLINS CABLEVISION OF PHILADELPHIA, INC. and the city of Philadelphia. . . .

(Emphasis added.)

Pursuant to the terms of the ordinance, City Council Resolution No. 534, which approved the franchise agreement between the city and Rollins, was certified by the Council President.

The plaintiffs filed a complaint in equity seeking injunctive relief and charging that the approving resolution was adopted in the absence of a quorum and was therefore of no effect.

The Mayor, Council President and Rollins preliminarily objected on the ground, among others, that as a duly certified and filed resolution, the bill was entitled to a conclusive presumption of validity under the "enrolled bill doctrine." *Field v. Clark,* 143 U.S. 649 (1892). The common pleas court held that the resolution was valid and dismissed the complaint.

Preliminary objections are not to be sustained unless it is clear that the law will not permit the recovery being sought. *County of Allegheny v. Commonwealth,* 507 Pa. 360, 490 A.2d 402 (1985). Moreover, preliminary objections in the nature of a demurrer admit all well-pleaded facts as true. *E-Z Parks, Inc. v. Larson,* 91 Pa. Commonwealth Ct. 600, 498 A.2d 1364 (1985), *aff'd,* 509 Pa. 496, 503 A.2d 931 (1985). Consequently, we must proceed on the assumption that the council adopted the ratifying resolution without a quorum of members present.

The defendants preliminarily objected to the plaintiff's complaint on three grounds which we will analyze individually: (1) the plaintiffs lack standing to question the legitimacy of a council resolution; (2) the enrolled bill doctrine affords the ratifying resolution a conclusive presumption of validity; and (3) the plaintiff's challenge is nonjusticiable because the plaintiff-council members failed to follow council procedures for challenging the resolution.

## 1. *Standing*

Our Supreme Court outlined the general principles of standing as follows:

> The core concept, of course, is that a person who is not adversely affected in any way by the matter he seeks to challenge is not 'aggrieved' thereby and has no standing to obtain a judicial resolution of his challenge. In particular, it is not sufficient for the person claiming to be 'aggrieved' to assert the common interest of all citizens in procuring obedience to the law.

*William Penn Parking Garage, Inc. v. City of Pittsburgh,* 464 Pa. 168, 192, 346 A.2d 269, 280-81 (1975).

The plaintiffs in this action may be categorized in three groups: (1) council members; (2) taxpayers and residents of the City of Philadelphia generally; and (3) taxpayers and residents of designated Area III of the City of Philadelphia. We shall consider the last two groups first.

In averment 28 of the complaint, the plaintiffs contend that they are "aggrieved" as follows:

> (a) Plaintiffs' voice in City Government, through the power of their elected representatives, is being diluted by a minority of the City Council;

(b)    Plaintiffs' rights as taxpayers of the City of Philadelphia are being violated by binding the City of Philadelphia to, a contract with potential, liability through the actions of a minority of the City Council without fair representation;

(c)    Plaintiffs' right to fair representation under the Philadelphia Home Rule Charter and the Rules of City Council are being violated by a minority of the City Council; and

(d)    Plaintiffs have been disenfranchised by the illegal actions of the City Council.

Because the Area III residents aver no special injury other than that suffered by other taxpayers generally, we shall treat the non-council member plaintiffs uniformly.

The first issue presented is whether city taxpayers have standing to challenge a city council resolution authorizing the Mayor's execution of a cable franchise contract.

The injury which the taxpayers allege is the lack of fair representation with regard to the ratification of the Area III cable television contract. Essentially, their concern is equivalent to "the common interest of all citizens [of Philadelphia] in procuring obedience to the law," which is insufficient to support standing under *William Penn Parking Garage, Inc.*

Our Supreme Court has granted standing to taxpayers to challenge the award of a public contract to a contractor other than the lowest bidder. *Lutz Appellate Printers v. Commonwealth, Department of Property and Supplies,* 472 Pa. 28, 370 A.2d 1210 (1977). The plaintiff's complaint, however, does not challenge the council's choice of contractors—merely the ratification process of the negotiated contract.

In *Application of Biester,* 487 Pa. 438, 409 A.2d 848 (1979), our Supreme Court held that:

> In the absence of special circumstances . . . and in the absence of an effect on the amount of tax paid by the plaintiff-taxpayer . . . the prevention of a waste of tax revenue has been correctly held to be an interest which is not immediate because the detriment to the taxpayer is too remote since he is not directly or specially affected by the loss.

*Id.* at 444, 409 A.2d at 851.

Because these plaintiff-taxpayers aver only the common interest in city council's adherence to quorum requirements when voting on resolutions, and because they fail to aver special circumstances, an effect on the amount of tax they must pay, or even a waste of tax revenue, we must conclude that the plaintiff-taxpayers are not truly aggrieved and, therefore, lack standing to challenge the ratifying resolution.

Regarding the plaintiff-council members, however, we find this case analogous to *Zemprelli v. Thornburgh,* 47 Pa. Commonwealth Ct. 43, 407 A.2d 102 (1979), in which we concluded that a State Senator had standing to compel the Governor to submit nominations for vacant state official positions. The reason for our conclusion in *Zemprelli* was that the Senator was granted a right by statute to vote on certain nominations which the Governor had to submit to the Senate within 90 days of the first day of the vacancy. The Senator thereby had a legal interest which he could enforce, under this court's original jurisdiction, to compel the Governor's submission of the delinquent nominations.

Similarly, we note that the plaintiff-council members, as council members, have a legal interest, granted by the home rule charter, in having *a quorum present* to vote on council resolutions. Because, on preliminary objections, we must assume that a quorum of council members was not present to ratify the negotiated con-

tract, the conclusion must be that the plaintiff-council members are "aggrieved" and have standing to vindicate their legal interests in this action.

## 2. *The Enrolled Bill Doctrine*

The enrolled bill doctrine provides that a failure of the legislature to follow a certain procedure does not present a justiciable question nor impair the validity of a duly certified enactment. *Mikell v. Philadelphia School District,* 359 Pa. 113, 58 A.2d 339 (1948).

While admitting that the question of whether the doctrine applies to the Philadelphia City Council is one of first impression, the trial court found "no reason why the enrolled bill rule should not be applicable" to city council because, under the Philadelphia Home Rule Charter, the city council acts as the legislative body of the City of Philadelphia.

Our Supreme Court has held, however, that the enrolled bill doctrine does not apply to legislative bodies of a third class city or a borough. *See Altoona City v. Bowman,* 171 Pa. 307, 33 A. 187 (1895), and *Mixell v. Hellertown Borough Council,* 374 Pa. 412, 97 A.2d 822 (1953), respectively.

The trial court distinguished these cases from the case at bar and held that the enrolled bill doctrine applies to the Philadelphia City Council on the basis that a first class city is not "restricted by any particular procedural restrictions enacted by the state—restrictions which were involved in the *Altoona* and *Hellertown* cases." Implicit in this holding is that trial court's view that a first class city has more expansive powers of self-government than lower-classified cities.

Our Supreme Court has rejected this argument in another context. *See Greenberg v. City of Bradford,* 432 Pa. 611, 248 A.2d 51 (1968). In *Greenberg,* the court rejected the contention that although Philadelphia

could, by local regulation, supersede statewide statutes affecting the personnel and administration of offices local to Philadelphia, third-class cities, which have adopted optional charter forms of government, could not supersede state-wide statutes which also affect non-optionally chartered third class cities. In so deciding, the court held that:

> The constitutional provision authorizing home rule for cities does not in any way distinguish Philadelphia from the other cities of the Commonwealth. Moreover, . . . Constitutional Amendments expand the home rule concept by permitting all units of local government regardless of 'size' to adopt home rule charters.

*Id.* at 615, 248 A.2d at 53.

We therefore must conclude that no basis exists for distinguishing Philadelphia from other cities in the Commonwealth with respect to the applicability of the enrolled bill doctrine.

Moreover, even if the doctrine were to apply to the Philadelphia City Council, we could not apply it to the present case because the ratifying resolution does not constitute legislation. Section 2.2-200 of the charter requires that legislative acts be done by *ordinance.* The stated purpose of this charter provision is to abandon the "confusing practice of enacting some kinds of legislation by ordinance and others by resolution." Thus, the charter expressly recognizes that legislative action can only take place by ordinance.

The plaintiffs contest only the validity of the resolution ratifying the franchise award which, by the council's own definition, is not legislation. Nothing in the council's action indicates that it intended the agreement approval to be subject to the stricter requirements of a legislative ordinance. If council wished the safeguards provided in section 2-200 to apply to the *approval* of the

franchise contract, it could have specified in the award-
ing ordinance that approval was to be by a subsequent
*ordinance*. However, council, by its own action, com-
mitted approval to the more flexible and less formal res-
olution procedures.

We conclude, therefore, that the trial court erred in
holding that the enrolled bill doctrine applies to the
Philadelphia City Council and that the resolution was
"legislation" protected under that doctrine.

### 3. *Council Rules of Procedure*

In their demurrer, the defendants contend that the
complaining council members have presented no justi-
ciable question because they did not follow the council's
rules for questioning the presence of a quorum and do
not challenge the validity of the rules.

The rules of council, embodied in Resolution No. 1,
1984-1988, and adopted pursuant to the council's au-
thority under the home rule charter, provide for the in-
troduction of resolutions and notice to members of
resolutions being considered for passage.

The council rules also provide that the Council
President is responsible for determining the existence of
a quorum and that, if a quorum question is raised, the
president must take a roll call and summon the absent
members when necessary. Rules, section I(3).

The defendants maintain that the procedure for
questioning the lack of a quorum outlined in section I(3)
is the *exclusive* means of making such a challenge. In
other words, a council member must be present at the
time of the sub-quorum vote in order to object to the
lack of quorum.

Careful scrutiny of the averments in the complaint,
and the council minutes attached, does not reveal
whether the complaining members were present or ab-

sent; therefore, neither alternative can be assumed for the purpose of considering preliminary objections.

Although we are not at liberty to inquire into the validity of council's internal operating rules in the absence of any challenge to them, we cannot agree that a rule requiring a quorum objection to be made by an *attending* member can logically provide the *sole* method of objecting to lack of a quorum.

If the council rules provide no way by which a member can challenge action taken without a quorum in his absence, then a court challenge to the validity of the council resolution must be available as a remedy. Although a court in equity could not grant relief to a complainant averring a procedural violation by a municipal body where the complainant has himself failed to employ a *sufficient* remedy in the same rules of procedure, the plaintiff-council members, under these council rules, have not had an opportunity to object to illegal council proceedings taken in their absence. We cannot, then, view the plaintiffs as having come into the common pleas court with unclean hands in this matter.

At the very least, dismissal of the complaint on the ground of waiver, through a failure to object at the meeting, is premature until the record shows whether the plaintiffs were present or absent.

We note that Rollins contends, in its brief, that the council later approved the journal of the session at which the ratifying resolution was adopted without objection to the lack of a quorum, but the pleadings contain no averment to that effect, and we may therefore not consider it on preliminary objections. That point provides additional need for fact-finding by the trial court before this matter can be resolved.

Accordingly, the defendants' preliminary objections to the plaintiff-taxpayers' lack of standing are sustained and the dismissal of the complaint is affirmed as to

plaintiffs Morris, Smith, O'Farrell, Byron, Lindsey, Miller and Berry. The order of the Philadelphia Court of Common Pleas is reversed to the extent that the preliminary objections are overruled in all other respects, and the case is remanded for the filing of an answer and further proceedings.

## ORDER

Now, July 22, 1987, the order of the Philadelphia Court of Common Pleas entered at No. 484, October Term, 1985, on December 23, 1985, is affirmed insofar as the complaint is dismissed as to plaintiffs Morris, Smith, O'Farrell, Byron, Lindsey, Miller and Berry, for lack of standing.

The order is reversed as to plaintiffs Beloff, Krajewski, Rafferty, Hughes and O'Neill, and the case is remanded for further proceedings consistent with this opinion.

Jurisdiction relinquished.

---

DISSENTING OPINION BY PRESIDENT JUDGE CRUMLISH, JR.:

I respectfully dissent because I believe Rollins' demurrer should be sustained.

Article 9, §2 of our Commonwealth's Constitution gives municipalities the authority to frame and adopt home rule charters and to exercise any power or perform any function not limited by the Constitution, charter or the General Assembly. Section 2.2-104 of Philadelphia's Home Rule Charter directs City Council to adopt rules providing for its own organization.

Like the majority, I do not believe this Court "is at liberty to inquire into the validity of Council's internal operating rules in the absence of any challenge to them. . . ." Majority, slip op. at 12. The appellants' original complaint alleged that the approving resolution is in-

valid and of no effect because the Council president did not follow these rules when he caused it to be adopted. Complaint, paragraphs 21 to 23.

To this Rollins demurs, stating: "The Rules of City Council, upon which plaintiffs rely exclusively to establish their alleged right to relief, preclude any court challenge to the existence of a quorum when Resolution No. 534 was approved." Demurrer, paragraph 1B.

I would agree. Council rules provide the means for challenging the lack of a quorum. Nowhere did the appellants aver that they have exhausted these remedies. To permit a court to inquire into allegations of voting irregularities, before a complainant establishes that he has no other recourse, is to invite a floodgate of litigation occasioned by every instance when a dissatisfied Council member chooses to challenge an enactment on the basis of a procedural infraction. This is especially true in cases of Council *resolutions,* which are not limited by the strict voting requirements of legislative ordinances. The Court should refrain from entertaining such challenges when internal procedural remedies exist.

Council rules provide for notice of bills to be considered and for summoning absent members. I do not condone rules which require a Council member to be present in order to object to the lack of a quorum. However, I don't believe this Court should question the validity of those rules when that issue is simply not before us.