

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-12-2008

# Goode v. Phila

Precedential or Non-Precedential: Precedential

Docket No. 07-3164

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Goode v. Phila" (2008). *2008 Decisions.* Paper 590.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/590

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 07-3164

———————

W. WILSON GOODE, JR., IN HIS OFFICIAL CAPACITY
AS A MEMBER OF THE
CITY COUNCIL OF THE CITY OF PHILADELPHIA;
JOAN L. KRAJEWSKI, IN HER OFFICIAL CAPACITY AS
A MEMBER OF THE
CITY COUNCIL OF THE CITY OF PHILADELPHIA;
FRANK DICICCO, IN HIS OFFICIAL CAPACITY AS A
A MEMBER OF THE CITY
COUNCIL OF THE CITY OF PHILADELPHIA;
FRANK RIZZO, IN HIS OFFICIAL CAPACITY AS A
MEMBER OF THE CITY COUNCIL OF THE CITY OF
PHILADELPHIA;
JAMES KENNEY, IN HIS OFFICIAL CAPACITY AS A
MEMBER OF THE CITY
COUNCIL OF THE CITY OF PHILADELPHIA;
LYNN MCCONVILLE; NATIONAL ASSOCIATION FOR
THE ADVANCEMENT OF COLORED PEOPLE,
PHILADELPHIA CHAPTER; MAYFAIR COMMUNITY
DEVELOPMENT CORPORATION; TACONY CIVIC
ASSOCIATION; WEST SHORE NEIGHBORS; SOCIETY
CREATED TO REDUCE URBAN BLIGHT,

Appellants

v.


THE CITY OF PHILADELPHIA;
ROMULO L. DIAZ, IN HIS OFFICIAL CAPACITY AS
CITY SOLICITOR
OF THE CITY OF PHILADELPHIA

_____


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 07-00901)
Honorable John P. Fullam, District Judge

_____


Argued June 10, 2008


BEFORE:  AMBRO, CHAGARES,
and GREENBERG, Circuit Judges


(Filed: August 12, 2008)

_____


Charles C. Sweedler (argued)
Levin, Fishbein, Sedran & Berman
510 Walnut Street
Suite 500
Philadelphia, PA 19106-0000

 Attorneys for Appellants

Elizabeth S. Campbell

2

Barbara W. Mather (argued)
A. Michael Pratt
T. Joel Zuercher
Pepper Hamilton
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103-0000

    Attorneys for Appellees

─────────

OPINION OF THE COURT

─────────

GREENBERG, Circuit Judge.

## I. INTRODUCTION

This matter comes on before this court on appeal from an order entered in the District Court on June 21, 2007, dismissing this case with prejudice for lack of standing of each of the plaintiff-appellants and for failure to state a federal claim on which the court could grant relief. The case concerns the legality of a settlement agreement ("Agreement") which the Philadelphia City Solicitor ("Solicitor"), acting on behalf of the City of Philadelphia ("City"), entered into with certain Philadelphia billboard operators concerning the regulation of billboards in Philadelphia. Appellants claim that in entering into the Agreement the Solicitor exceeded his executive authority, usurped the City Council's lawmaking powers, and violated

3

Philadelphia zoning ordinances. The District Court dismissed the action because it concluded that none of the appellants had standing to pursue the claims. The court further held that "no federal claims of any sort can be discerned from [appellants'] complaint." App. at 105.

Appellants then appealed. The primary issue on this appeal is whether appellants have standing to bring this action. For the reasons that we will explain, we hold that the District Court correctly concluded that appellants do not have standing. Accordingly, we will affirm its order of June 21, 2007, except that inasmuch as the District Court by reason of appellants' want of standing did not have subject matter jurisdiction, see Pennsylvania Prison Soc'y v. Cortes, 508 F.3d 156, 158-59 (3d Cir. 2007), and we do not pass on the merits of the complaint, we will modify the order to the end that it will be without prejudice to appellants instituting a similar action in the state courts.

## II. BACKGROUND

This case is an outgrowth of an action that several Philadelphia billboard operators filed in November 2005 in the Eastern District of Pennsylvania against the City challenging certain of its regulations of billboard advertisements. Free Speech, LLC v. City of Philadelphia, Civ. No. 05-6188 (E.D. Pa. filed Nov. 29, 2005). The plaintiffs in Free Speech were three outdoor advertising companies, specifically CBS Outdoor Inc., Clear Channel Outdoor, Inc., and H.A. Steen Industries, Inc., as well as Free Speech, LLC, an association which included other plaintiffs as its members (collectively "Billboard

4

Operators"). In the Free Speech action the Billboard Operators questioned the legality of the Philadelphia City Council's June 2005 amendments to the Philadelphia Code's regulation of "outdoor advertising signs" within the City. The Billboard Operators claimed that the new regulations imposed fees and certain other requirements on "outdoor advertising signs" based on their content and that the regulations therefore violated the Billboard Operators' First Amendment right to free speech.

In August 2006, following long negotiations, the Solicitor on behalf of the City entered into the Agreement with the Billboard Operators to resolve the Free Speech action.[1] The Agreement, however, was not a federal consent judgment reviewed or issued by the Free Speech court and was what the parties have called a "private" Agreement. The Agreement provides that:

> A Certified Billboard identified and described on a Certified Inventory shall be deemed to be a lawful Outdoor Advertising Sign under the Philadelphia Code, and at all times shall retain that lawful status, and the City shall issue an annual 'License for Individual Outdoor Advertising Sign' for each such Certified Billboard . . . .

App. at 58 (Agreement § V.A.). In addition to providing that the City would issue licenses for the specified billboards, the Agreement specifies comprehensive procedures for resolving

_____

[1]The Agreement was signed "City of Philadelphia By: Romulo L. Diaz, Jr. (ID No. 88795) City Solicitor." App. at 76.

any disputes that may arise from its implementation. Thus, the Agreement provides that:

> [U]nder this Consent Agreement, all parties hereto have agreed to forego their statutory rights under the Philadelphia Code for recourse to the administrative agencies and the Courts, and have agreed to the final determinations of a Special Master with respect to certain disputes arising under this Consent Agreement regarding the lawful status of certain Outdoor Advertising Signs.

App. at 47-48 (Agreement § I.). In addition, the Agreement provides that:

> All disputes with respect to the regulation of a Certified Billboard arising under the provisions of the Philadelphia Code as further specified and provided by this Agreement, shall be resolved in the following manner:

> 1. In the event that a Settling Party or the City believes there is such a dispute, it shall provide written notice of such dispute to the other Party. Within 10 business days after receipt of such notice, unless another time is mutually agreed upon, the concerned Parties shall meet and exchange all documents and other information and make a good faith effort to resolve the dispute at that time.

> 2. In the event that the Parties are unable to

6

resolve the dispute they shall immediately submit the matter to the Special Master for final and binding decision.

3. The Special Master shall receive information from the Parties and conduct all arbitrations in accordance with the Commercial Arbitration Rules of the American Arbitration Association, or pursuant to such procedures as the Special Master may propose and to which the Parties agree.

App. at 59 (Agreement § V.C.). The Agreement also provides that:

This Agreement shall be effective and binding on the Parties, their successors and assigns for the Effective Period and shall supersede conflicting provisions of law. This Agreement shall become effective upon the Effective Date.

App. at 71 (Agreement § IX.B.).

The parties in their briefs do not suggest that the City Council approved or authorized the Solicitor to enter into the Agreement and we are satisfied that it did not do so. The appellees indicate, however, in their brief, without citation to the record, that:

the Solicitor's internal evaluation of the merits of the litigation and consideration of the issues raised [and] his views and goals for settlement were made known publicly throughout the negotiations on multiple occasions, including in testimony to City Council on the Law

7

> Department's budget in April 2005, and in an April 2006 meeting with the Mayor and representatives of community organizations, some of whom are plaintiffs in this matter.

Appellees' br. at 4 n.1.[2]  Appellants in their reply brief do not challenge this statement.

On March 6, 2007, appellants filed this action claiming that the Agreement should not be enforced.  Appellants are five members of the Philadelphia City Council (a numerical minority of that body), five community organizations, and a Philadelphia resident.  The City Council itself, however, was not a plaintiff in the action and the Council as a body did not authorize its five members to bring the case even though they purport to sue in their official capacities as Council members.  In their complaint appellants advanced five challenges to the Agreement predicated on their belief that the Agreement is unlawful because of:  (1) its usurpation of their legislative powers in violation of the Fifth and Fourteenth Amendments; (2) its deprivation of their access to the courts in violation of the First, Fifth, and Fourteenth Amendments and its deprivation of their privileges and

---

[2]We have no explanation for the circumstance that the testimony in April 2005 was before the Council adopted the amendments to the Philadelphia Code in June 2005 and before the Billboard operators filed <u>Free Speech</u>.  We recognize, however, that it is possible that the Billboard Operators and the Solicitor were trying to resolve their differences before the Council adopted the June 2005 amendments and the Billboard Operators filed <u>Free Speech</u>.

immunities secured by Article IV of the Constitution; (3) its deprivation of their right to petition the legislature in violation of the First, Fifth, and Fourteenth Amendments; (4) its violation of the Pennsylvania Sunshine Act, 65 Pa. Cons. Stat. Ann. §§ 701, et seq. (West 2000); and (5) the circumstance that it provides for zoning by contract. App. 17-19. The defendants, now the appellees, are the City and the Solicitor in his official capacity.[3] As a matter of convenience we sometimes refer to the Council members as legislators, ordinances as legislation, and the Council as the legislature because precedents germane to the case often involve use of those terms.

The appellees moved to dismiss the complaint. As we indicated at the outset, in a memorandum entered on June 21, 2007, the District Court granted appellees' motion and dismissed the case with prejudice for two reasons. First it held that no appellant had standing to bring the action. Then it held that it could not discern a federal claim in the complaint. See Fed. R. Civ. P. 12(b)(6). Appellants appeal from the District Court's order dismissing their action with prejudice.

III. JURISDICTION AND STANDARD OF REVIEW

---

[3]Appellants did not include the Billboard Operators as defendants but we will not linger on the question of whether they were necessary or indispensable parties under Fed. R. Civ. P. 19, as we agree with the District Court that appellants do not have standing to bring this action and thus the District Court did not have jurisdiction over this action. See Pennsylvania Prison Soc'y, 508 F.3d at 158-59.

9

Appellants pled that the District Court had federal jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(3) and (4) and 42 U.S.C. § § 1983 and 1988 and supplemental jurisdiction over their state law claims pursuant to 28 U.S.C. § 1367. We have jurisdiction on appellants' appeal pursuant to 28 U.S.C. § 1291. We exercise plenary review of standing issues, but review the factual elements underlying the District Court's determination of standing on a clear error standard. See Gen. Instrument Corp. v. Nu-Tek Elec. & Mfg., Inc., 197 F.3d 83, 86 (3d Cir. 1999).

## IV. DISCUSSION

Our principal concern on this appeal is to determine whether any appellant has standing to bring this action. We start this inquiry by quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 112 S.Ct. 2130 (1992), in which the Supreme Court described the elements necessary for establishing "the irreducible constitutional minimum of standing" under Article III of the Constitution as follows:

> First, the plaintiff must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, . . . and (b) actual or imminent, not conjectural or hypothetical . . . . Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before

the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Id. at 560, 112 S.Ct. at 2136 (internal quotation marks and citations omitted). In determining whether appellants have standing, we must consider their specific allegations and the relief which they seek. See City of Los Angeles v. Lyons, 461 U.S. 95, 105-06, 103 S.Ct. 1660, 1667 (1983).

    A. Whether the City Council appellants have standing as legislators

Appellants argue that "[t]he City Solicitor, by signing a settlement agreement that claims to supersede all contrary provisions of law, seeks to usurp [the] City Council's exclusive power to repeal or amend existing ordinances, and each individual Council Member's right to consider and vote on any such proposed changes." Appellants' br. at 10. Indeed, the complaint correctly alleges that the Agreement provides that it "shall supersede conflicting provisions of law." App. at 71. Appellants characterize the Agreement as an attempt "to evade [the] City Council's exclusive power to consider and enact ordinances." Appellants' br. at 11. According to appellants:

> If the City Council plaintiffs lack standing here, then any executive official may 'supersede' any law he or she chooses, simply by inserting the desired provisions in a private litigation settlement agreement. As the Free Speech, LLC

11

case demonstrates, government officials would privately contract to supersede laws that have no bearing on the ostensible issues in the litigation they purport to settle. Such sweeping changes would be enacted through a settlement that, in its formation and execution, is deliberately hidden from the cleansing gaze of public or legislative scrutiny.

Id. at 16. Moreover, appellants argue that the political process is insufficient to deter the Solicitor's abuse of his powers because "[r]efusing standing on this basis would empower the executive branch to 'legislate' as it saw fit, constrained only by the prospect of a supermajority of the legislature re-enacting statutes that were already on the books." Id. at 15. Appellants' standing argument, however, clearly is overstated, as we are addressing only appellants' standing and not the standing of any other putative plaintiff and are addressing appellants' standing only in the District Court and not in a state court if they refile this case in that forum.

We start our standing inquiry by building on the proposition that "[l]egislators, like other litigants in federal court, must satisfy the jurisdictional prerequisites of Article III standing . . . ." Russell v. DeJongh, 491 F.3d 130, 133 (3d Cir. 2007). In Russell, we discussed the doctrine of standing in the context of cases where a legislator brings suit against another government official:

Concerns for separation of powers and the limited role of the judiciary are at the core of Article III

12

standing doctrine and the requirement that a plaintiff allege an injury in fact. Those concerns are particularly acute in legislator standing cases, and they inform the analysis of whether a legislator plaintiff has asserted an injury in fact sufficient to confer standing to sue. . . . The Supreme Court, this Court, and others have held that legislators have a legally protected interest in their right to vote on legislation and other matters committed to the legislature, which is sometimes phrased as an interest in maintaining the effectiveness of their votes. Not every affront to a legislator's interest in the effectiveness of his vote, however, is an injury in fact sufficient to confer standing to sue.

Id. at 133-34 (internal quotation marks and citations omitted).

In Russell we observed that "[i]n particular, the authorities appear to hold uniformly that an official's mere disobedience or flawed execution of a law for which a legislator voted . . . is not an injury in fact for standing purposes." Id. at 134 (citing Chiles v. Thornburgh, 865 F.2d 1197, 1205-06 (11th Cir. 1989); Goldwater v. Carter, 617 F.2d 697, 702 (D.C. Cir.) (en banc), vacated on other grounds, 444 U.S. 996, 100 S.Ct. 533 (1979); Daughtrey v. Carter, 584 F.2d 1050, 1057 (D.C. Cir. 1978); Harrington v. Bush, 553 F.2d 190, 203-04, 210, 213-14 (D.C. Cir. 1977); Harrington v. Schlesinger 528 F.2d 455, 459 (4th Cir. 1975)). See also Chenoweth v. Clinton, 181 F.3d 112, 113, 115 (D.C. Cir. 1999) (holding that members of House of Representatives did not have standing to sue President for

13

issuing an executive order on the basis that it had "denied them their proper role in the legislative process"); United Presbyterian Church in the U.S.A. v. Reagan, 738 F.2d 1375, 1381-82 (D.C. Cir. 1984) (holding that member of House of Representatives did not have standing to sue President for issuing an executive order that allegedly exceeded authority that Congress granted intelligence agencies and violated limitations imposed by Congress).

We went on in Russell to explain that "[t]he principal reason for this [limitation of the definition of injury for standing purposes] is that once a bill has become law, a legislator's interest in seeing that the law is followed is no different from a private citizen's general interest in proper government." 491 F.3d at 135. The Court of Appeals for the Eleventh Circuit stated the principle similarly in Chiles when it held that a senator did not have standing to sue the defendants for failing to comply with a statute for which he voted because "[s]uch a claim of injury . . . is nothing more than a 'generalized grievance[] about the conduct of [] government'" and therefore is insufficient to confer standing. 865 F.2d at 1205 (quoting Flast v. Cohen, 392 U.S. 83, 106, 88 S.Ct. 1942, 1955 (1968)). See also Mountain States Legal Found. v. Costle, 630 F.2d 754, 770 (10th Cir. 1980) ("A private litigant, whether he be a legislator, a citizen or a taxpayer must, in order to have 'standing' to sue, demonstrate a personal stake in the outcome, and demonstrate that he is the proper party to request adjudication of the particular issue.").

Appellants cite a number of cases to support their contention that the City Council members have standing to bring

14

this action. To begin, they rely heavily on <u>Dennis v. Luis</u>, 741 F.2d 628 (3d Cir. 1984), and <u>Silver v. Pataki</u>, 755 N.E.2d 842 (N.Y. 2001), both of which concerned legislators' standing to challenge actions by the governors of their jurisdictions. In <u>Dennis</u> we held that a group of legislators had standing to challenge the appointment by the Governor of the Virgin Islands of an "acting" Commissioner of Commerce because the commissioner's appointment required the legislature's advice and consent pursuant to Section 16(c) of the Virgin Islands Revised Organic Act of 1954, 48 U.S.C. § 1597(c), and the Virgin Islands Code, V.I. Code Ann. tit. 3, § 332(b) (1995). 741 F.2d at 631. In <u>Silver</u> the New York Court of Appeals held that the Speaker of the New York State Assembly had standing to challenge the Governor's line-item veto of portions of bills which the legislature passed. 755 N.E.2d at 847.

Clearly <u>Dennis</u> and <u>Silver</u> are distinguishable from this case. In <u>Dennis</u> the legislator plaintiffs claimed that the Governor's actions infringed on "their unique statutory right to advise the Governor on executive appointments and to confer their approval or disapproval in this regard." 741 F.2d at 631. In finding that the plaintiffs had standing we emphasized that "[t]he interest asserted is simply not a 'generalized interest of all citizens in constitutional governance . . . .'" <u>Id.</u> (quoting <u>Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc.</u>, 454 U.S. 464, 483, 102 S.Ct. 752, 764 (1982) (internal quotation marks omitted)). Moreover, we explained that "[s]ince the right to advise and consent has been vested only in members of the legislature, and since only members of the legislature are bringing this action, the allegation that this right has been usurped . . . [is] sufficiently

15

personal to constitute an injury in fact, thus satisfying the minimum constitutional requirements of standing." Id.

In a case of the same genre as Dennis, Silver concerned an allegedly unlawful veto by the Governor of provisions of bills that the legislature passed with the plaintiff's support, leading the court to describe the legislator plaintiff's lawsuit as an attempt "to uphold that legislative victory against a claimed unconstitutional use of the veto power nullifying his vote." 755 N.E.2d at 848. Thus, Silver involved an alleged unlawful interference with the legislative process, not, as here, an allegedly unlawful interference with the operation of municipal ordinances which have the force of laws. The Silver court was concerned that if it refused to review the Governor's veto the absence of judicial review "could render a legislator's vote meaningless and unnecessarily dilute one's legislative responsibilities." Id. at 846. Thus, even laying to one side the circumstance that Silver was a case in a state court not limited by the exacting federal standing requirements, Silver is distinguishable from this case.

Here, in contrast to Dennis and Silver, the City Council appellants do not claim that they have been deprived of meaningful participation in the legislative process, or that they have been unable to exercise their rights as legislators. Instead, the allegations in their complaint concern the City's enforcement, or rather lack of enforcement, of the local ordinances that the Council already had enacted and thus this case involves only generalized complaints about the functioning of government so that appellants have no different legally cognizable interest in the subject matter of the action than

16

anyone else in Philadelphia.

We have not overlooked appellants' contention advanced during oral argument that the Agreement, by exempting approximately 90% of the billboards in Philadelphia from the requirements of otherwise applicable local ordinances, renders it the functional equivalent of an amendment to or a repeal of sections of the Philadelphia Code.[4] But even if we were to agree with this disturbing characterization, which we acknowledge is not without force, there is no dispute that the ordinances which appellants claim have been amended or repealed constitute properly enacted legislation. Indeed, appellants seek to enforce those ordinances as laws with which the Billboard Operators must comply and appellees do not claim that the Council has repealed them.

In considering appellants' standing problem we come back to the point that we emphasized in Russell that "once a bill has become law, a legislator's interest in seeing that the law is followed is no different from a private citizen's general interest in proper government." 491 F.3d at 135. Appellants allege facts in the complaint that concern the City's alleged "disobedience or flawed execution of" the zoning ordinances for which City Council members voted, and, as we held in Russell, legislators lack standing to assert such claims. Id. at 134.

Appellants also refer to Cohen v. Rendell, 684 A.2d 1102 (Pa. Commw. Ct. 1996), and Morris v. Goode, 529 A.2d 50 (Pa.

_____

[4]Appellees in their brief confirm the 90% figure.

17

Commw. Ct. 1987), but neither case is helpful in deciding the present appeal. First, we are concerned, of course, with whether the City Council appellants, indeed all appellants, satisfy federal standing requirements, an issue that Cohen and Morris, like Silver, which concerned standing in state court, could not address. Second, though in Cohen and Morris the court found that the City Council member plaintiffs had standing, in those cases the plaintiffs, unlike appellants here, challenged actions that affected the voting process by which ordinances are enacted. See Cohen, 684 A.2d at 1105 ("Because Cohen, as an elected, voting member of Council, has a legal and direct interest in ensuring that Council follows the [voting] procedures set forth by the Charter, we hold that he does possess standing to bring his case against the City."); Morris, 529 A.2d at 53 ("[W]e note that the plaintiff-council members, as council members, have a legal interest, granted by the home rule charter, in having a quorum present to vote on council resolutions," and that "[b]ecause, on preliminary objections, we must assume that a quorum of council members were not present to ratify the negotiated contract, the conclusion must be that the plaintiff-council members are 'aggrieved' and have standing to vindicate their legal interests in this action.") (emphasis in original).

But in this case the City Council appellants do not seek to enforce voting procedures by which the Council enacts ordinances. Instead, they seek to compel the enforcement of ordinances that the Council has enacted. As we have explained, however, individual legislators do not have standing to assert claims based solely on the alleged "disobedience or flawed

18

execution of" enacted legislation. See Russell, 491 F.3d at 134.[5]

We have not overlooked the allegations of the complaint that go beyond seeking redress to the City Council appellants on account of the alleged infringement of their law-making function. The extra-legislative basis for relief is predicated on the provisions of the Agreement providing that any disputes arising from the Agreement are to be resolved through arbitration between the City and the Billboard Operators before a Special Master rather than through the usual prescribed process of being resolved in hearings before the Philadelphia Zoning Board of Adjustment ("ZBA"). By reason of this procedure appellants claim to be deprived of the right to participate in hearings in which they otherwise could participate. Appellants thus argue that the Agreement "removes the ZBA and the courts from any proceedings concerning the legality of the three billboard companies' existing billboards." Appellants' br. at 5. Appellants also argue that the Agreement provides that "adjudicating the legality of billboards – the most public and intentionally conspicuous of land uses – is a private matter between the billboard companies and the law department, to be

---

[5]We are not suggesting that if the City Council appellants otherwise had standing the fact that the Council as a body did not authorize this litigation would strip them of standing as that situation is not before us. In such a situation we might be in agreement with Silver to the extent that it indicates that "a controlling bloc of legislators (a number sufficient to enact or defeat legislation) [is not] a prerequisite to plaintiff's standing as a Member of the Assembly." 755 N.E.2d at 848-49.

19

heard by a private arbitrator with no public participation or public notice." Id.

These allegations concerning the elimination of the normal ZBA procedures for resolution of disputes arising from the Agreement, like appellants' arguments based on the City Council appellants' legislative function, fail to support the argument for the City Council appellants having standing. No differently from the allegations concerning the alleged noncompliance with the applicable billboard use, size, and maintenance requirements, this aspect of the complaint fails to demonstrate how the alleged exception of the particular billboards covered by the Agreement from the applicable zoning ordinances is causing appellants injury beyond that suffered by a private citizen or taxpayer seeking the proper functioning of the government. Absent particularized injury resulting from the billboards and their alleged noncompliance with the applicable ordinances, we fail to see how the inability of the City Council appellants (and, for that matter, the other appellants) to participate in disputes concerning those billboards causes them injury in fact sufficient to confer standing.

For these reasons, we conclude that the City Council appellants lack standing to assert their claims in their capacity as legislators. See Lujan, 504 U.S. at 560, 112 S.Ct. at 2136.

B. Whether appellants have standing as taxpayers

Appellants also argue that they have standing as taxpayers to bring the present action. Though the taxpayer standing argument primarily includes Lynn McConville, the sole

20

individual appellant in this case, we note that it probably extends to City Council appellants as they likely are taxpayers. We question, however, whether appellants' reliance on the taxpayer standing argument is only an afterthought, as their complaint does not allege that any appellant is a taxpayer in Philadelphia or, for the matter, anywhere else.

In arguing that as taxpayers they have standing to sue, appellants refer to the Philadelphia Zoning Code, which they cite for establishing the right for any aggrieved person to appear before the ZBA. Appellants claim that "[t]his statute confers individual rights on each plaintiff," including "City council members, taxpayers, or community groups composed of taxpayers." Appellants' br. at 20. In making their argument, appellants mainly rely on Society Created to Reduce Urban Blight (SCRUB) v. Zoning Board of Adjustment of the City of Philadelphia, 729 A.2d 117 (Pa. Commw. Ct. 1999), in which the state court explained that the provision "confer[s] standing to any 'taxpayer' in Philadelphia to challenge a decision of the Board." Id. at 121.

In considering appellants' claim that they have standing as taxpayers, we reiterate that a party seeking to invoke the judicial power of the federal courts is subject to the standing requirements of Article III. See ASARCO Inc. v. Kadish, 490 U.S. 605, 618, 109 S.Ct. 2037, 2046 (1989); see also Cantrell v. City of Long Beach, 241 F.3d 674, 683 (9th Cir. 2001) (applying federal standing requirements to taxpayers' lawsuit even though California state law permitted standing because "California's lenient taxpayer standing requirements do not relieve the [plaintiffs] of the obligation to establish a direct

21

injury under the more stringent federal requirements for state and municipal taxpayer standing"). Thus, even if Pennsylvania state law would have afforded appellants standing if they had brought this action in state court, we must ensure that they satisfy the federal requirements for standing as well.[6]

The complaint alleges that McConville "is a resident of Philadelphia," "[o]ne of the billboards implicated in this action, located at 4800 Woodland Avenue, is directly visible from her property," and she "has appeared as an objector at ZBA hearings

---

[6]Despite appellants' arguments to the contrary, we note that even if they could establish standing on some other basis to sue in the Pennsylvania state courts, they might not be able to do so on the basis of being taxpayers. Section 17.1 of the First Class City Home Rule Act applicable in Philadelphia grants standing to "any aggrieved person," but states that "the term 'aggrieved person' does not include taxpayers of the city that are not detrimentally harmed by the decision of the zoning hearing board or other board or commission created to regulate development." 53 Pa. Cons. Stat. Ann. § 13131.1 (West Supp. 2006). See also Spahn v. Zoning Bd. of Adjustment, 922 A.2d 24, 28 (Pa. Commw. Ct. 2007) (stating that "the General Assembly specifically limited the definition of an 'aggrieved person' by excluding taxpayers of the city who are not 'detrimentally harmed,'" and that Section 17.1 "effectively eliminated the grant of general taxpayer standing provided in Section 14-1807(1) of the Code"); Society Created to Reduce Urban Blight (SCRUB) v. Zoning Bd. of Adjustment of the City of Phila., 921 A.2d 536, 543 (Pa. Cmmw. Ct. 2007) (same).

22

at which the billboard company operating the billboards . . . withdrew its appeal of the City's denial of a zoning permit for those billboards." App. at 11. The complaint, however, does not include allegations adequately explaining how implementation of the terms of the Agreement injures McConville. Thus, though the complaint alleges that pursuant to the Agreement the listed billboards are freed from the use, size, and maintenance requirements of the zoning ordinances, it does not explain how these particular exclusions from the zoning ordinances constitute an injury in fact, i.e., "an invasion of a legally protected interest which is (a) concrete and particularized, . . . and (b) actual or imminent, not conjectural or hypothetical," with respect to McConville. Lujan, 504 U.S. at 560, 112 S.Ct. at 2136 (internal quotation marks and citations omitted).

The complaint's failure to allege that the Agreement and its implementation injured McConville beyond the generalized injury that all persons in Philadelphia suffered by reason of it is critical, for, as we explained in Russell, "[t]he Supreme Court has 'consistently held that a plaintiff raising only a generally available grievance about government – claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large – does not state an Article III case or controversy.'" 491 F.3d at 135 (quoting Lujan, 504 U.S. at 573-74, 112 S.Ct. at 2143). Thus, McConville does not have standing as a taxpayer and for the same reason the City Council appellants as taxpayers do not

23

have standing.[7]

In addition to arguing that as taxpayers they are entitled to appear before the ZBA, appellants argue that "the non-City Council plaintiffs were deprived of their legal right to petition City Council concerning the amendments to zoning ordinances sought via the Settlement Agreement," referring to Philadelphia Home Rule Charter § 2-201. Appellants' br. at 20. Appellants again characterize the Agreement as new legislation and claim that "[d]efendants stripped plaintiffs of their right of access to the courts, to debate and vote on laws, and to comment on proposed laws, without any notice or opportunity to be heard." Id. at 24. But the problem with appellants' argument is that, as is true with respect to their contention that they have standing based on the elimination of ZBA proceedings, they fail to identify sufficient injury from the alleged noncompliance of the billboards with the applicable ordinances to give them standing. Thus, even if we characterized the Agreement as appellants do, i.e., as legislation, without sufficient allegations concerning the injury they suffer from the noncompliance of the noncomplying billboards with the duly enacted ordinances, we do not see how

---

[7]We are not suggesting that taxpayers never have standing to challenge municipal action. We are holding only that in the circumstances of this case no appellant has standing as a taxpayer because no appellant has set forth allegations explaining how he or she suffered injury by reason of being a taxpayer. Indeed, as we indicated above, the complaint does not allege that any appellant, even McConville, is a Philadelphia taxpayer.

24

their inability to participate in the negotiation of the Agreement injured them.

Appellants argue that the mere circumstance that their injury is of a general nature should not lead to a dismissal of their claims. In this regard they cite Clinton v. City of New York, 524 U.S. 417, 118 S.Ct. 2091 (1998), which states:

> [It is a] self-evident proposition that more than one party may have standing to challenge a particular action or inaction. Once it is determined that a particular plaintiff is harmed by the defendant, and that the harm will likely be redressed by a favorable decision, that plaintiff has standing – regardless of whether there are others who would also have standing to sue.

Id. at 434-36, 118 S.Ct. at 2101-02. Appellants lack standing, however, not because the alleged injuries they suffer are widely felt, but because their injuries are no different in nature from the general interest in enforcing compliance with the law which the public shares. See Russell, 491 F.3d at 135.

We note appellants' argument that "[n]umerous courts have . . . held that governmental defendants may not settle litigation by agreeing to terms that exceed their authority or invade the rights of third parties," and that they cite to a number of cases to support that proposition. Appellants' br. at 26-29 (citing Cleveland County Ass'n for Gov't by the People v. Cleveland County Bd. of Comm'rs, 142 F.3d 468, 476 (D.C. Cir. 1998); Executive Bus. Media, Inc. v. U.S. Dep't of Defense,

25

3 F.3d 759, 762 (4th Cir. 1993); People Who Care v. Rockford Bd. of Educ. Sch. Dist. No. 205, 961 F.2d 1335, 1337 (7th Cir. 1992); Kasper v. Bd. of Election Comm'rs of the City of Chicago, 814 F.2d 332, 341 (7th Cir. 1987); Dunn v. Carey, 808 F.2d 555, 560 (7th Cir. 1986); United States v. Alex. Brown & Sons, Inc., 963 F. Supp. 235, 240 (S.D.N.Y. 1997); In re Prudential Ins. Co. of Am. Sales Practices Litig., 962 F. Supp. 450, 561 (D.N.J. 1997)).

In each of these cases, however, the court either did not address the issue of standing or found that the plaintiffs had standing to assert their claims based on circumstances inapplicable here so that the cases are distinguishable from this case and are not guides to us here.  See Cleveland County Ass'n for Gov't by the People, 142 F.3d at 472-73 (holding unincorporated association of voters within county had standing to challenge consent degree concerning method for electing county commissioners because "its members have been denied the opportunity to vote for a full slate of the elected officials of their choice" which the court described as members' "protected voting rights"); Executive Bus. Media, 3 F.3d at 761 (discussing challenge brought by company competing for government contract against settlement agreement between government and competitor in which competitor was awarded contract); People Who Care, 961 F.2d at 1336-37 (discussing challenge brought by unions against consent degree that would undo certain provisions in applicable collective bargaining agreements); Kasper, 814 F.2d at 339 (discussing challenge brought by parties who submitted proposed consent decree to district court for voter registration procedures after district court declined to enter proposed consent decree); Dunn, 808 F.2d at 560 (affirming

26

district court's decision not to join to federal case individuals who were parties in separate state action challenging federal consent decree entered as part of federal case); Alex. Brown & Sons, 963 F. Supp. at 236, 240 (discussing challenge which intervening parties in related multi-district action brought against proposed consent decree proposed by the parties in the case); In re Prudential Ins., 962 F. Supp. at 479, 500 (discussing challenge by party in action consolidated in MDL case to proposed settlement agreement).

Appellants also refer to League of Residential Neighborhood Advocates v. City of Los Angeles, 498 F.3d 1052 (9th Cir. 2007). There, the City of Los Angeles entered a settlement agreement with an Orthodox Jewish congregation granting the congregation a conditional use permit subject to numerous restrictive conditions to operate a synagogue in a residential use zone. Id. at 1053. In an action that neighbors of the synagogue brought challenging the settlement, the Court of Appeals for the Ninth Circuit held that the agreement violated municipal zoning laws and therefore was unenforceable. Id. at 1056-57. In doing so, however, the court of appeals did not address the question of whether the plaintiffs had standing to assert their claims. See id. at 1053-55. This omission seems understandable, as the neighbors surely would be impacted directly by a large public facility located near them and accordingly would suffer a particularized injury from the operation of the facility very different from that of the general public. In the circumstances we do not consider that case to be useful in determining whether appellants have standing in the present action.

In addition, appellants argue that Keith v. Volpe, 118 F.3d 1386 (9th Cir. 1997), a case like League of Residential Advocates from the Court of Appeals of the Ninth Circuit, should guide our analysis. In Keith an advertising billboard developer who was not a party in a case leading to entry of a federal consent decree involving a freeway appealed from the district court's entry of a preliminary injunction prohibiting the issuance of permits that the developer was seeking allegedly in violation of the consent decree. 118 F.3d at 1388. Although, as had been true in the proceedings leading to the consent decree, the developer was not a party in Keith, he nevertheless participated in the Keith proceedings before the court by responding to an order to show cause through the filing of a memorandum and engaging in the oral argument prior to the court issuing the preliminary injunction. Id. at 1389-90. The Court of Appeals for the Ninth Circuit concluded that the developer had standing to appeal because the developer, in participating in the district court proceedings, did so at the district court's request and an injunction enforcing the consent decree would have been adverse to the developer's interests. Thus, the court of appeals regarded the appellant as having been "haled into this action by the district court over his objections." Id. at 1391 & n.7.

Here, in contrast, no one haled appellants into court. Rather, appellants initiated the present action in the District Court, which responded by dismissing their case for lack of standing. Therefore, other than the fact that appellants participated in the District Court proceedings, there are no pertinent similarities between appellants in this case and the developer in Keith with respect to standing issues. Moreover,

28

we cannot allow the fact that appellants filed the complaint and then participated in the District Court proceedings to establish standing. To do so would permit individuals to assert claims that they have no standing to assert, argue that they have standing, have their claims dismissed, and then establish standing in the court of appeals based on their participation in the district court proceedings. Such a process would circumvent the need for the parties to meet "irreducible constitutional minimum" requirements to establish standing, <u>Lujan</u>, 504 U.S. at 560, 112 S.Ct. at 2136. We therefore reject appellants' argument that <u>Keith</u> applies to this case.

In conclusion, although appellants argue that they have standing as taxpayers pursuant to state law, they have failed to allege any facts showing that they satisfy the federal requirements for standing with respect to the taxpayer appellants.

      C.  Whether the community organization plaintiffs have associational standing

An association in some circumstances may pursue claims as a representative of its members. But to do so it "must demonstrate that '(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" <u>Pa. Psychiatric Soc'y v. Green Spring Health Servs., Inc.</u>, 280 F.3d 278, 283 (3d Cir. 2002) (quoting <u>Hunt v. Wash. State Apple Adver. Comm'n</u>, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441

29

(1977)).

Here, the complaint contains allegations concerning the circumstances of each of the five community organization plaintiffs in this case. According to the complaint, each organization has an office in Philadelphia and either has participated in zoning disputes or sought to enforce provisions of applicable law governing outdoor advertising in Philadelphia. Four of the five organizations are dedicated to improving aspects of the environment in the City and have members who live in or own property near billboards that potentially would be affected by the outcome of this action. The complaint also alleges that one of these four organizations has "appeared as an objector at the ZBA proceedings concerning 4800 Woodland Avenue," the site of one of the billboards implicated in this case. App. at 11.

Despite these allegations which we accept on this appeal, appellants fail to allege facts that demonstrate that the members of these organizations would have standing in their own right to bring the present lawsuit. All that we can discern from the complaint is that the organizations have members that live in or own property in the City – we know nothing about how the billboards covered by the Agreement or the billboards' alleged noncompliance with the applicable zoning laws injures those members. Indeed, the complaint merely states that the members either live in or own property that "would potentially be affected by the outcome of this action." Id. That nonspecific statement is nothing more than a generalized grievance insufficient under Russell to establish standing. Without specific allegations showing that the Agreement causes the members of the

30

community organizations injury in fact, appellants have failed to demonstrate that its members would have standing to pursue this case in their own right. We therefore conclude that the community organization appellants lack standing to litigate the present case. See Pa. Psychiatric Soc'y, 280 F.3d at 283.

## V. CONCLUSION

For the foregoing reasons, we conclude that there is no appellant with standing to bring this action and therefore we do not pass on the merits of appellants' claims. Yet we recognize that although the executive branch of government must be afforded appropriate deference in the legitimate exercise of its powers, it might abuse those powers, and recourse to the courts should be available to deter such conduct. We emphasize, therefore, that our decision should not be viewed as condoning the Solicitor's decision to enter into the Agreement nor as shielding the Agreement from judicial review in an action properly brought to challenge it. Rather, we only hold that appellants do not have standing to challenge the Agreement in the District Court.

Our reservations concerning what happened here are magnified by the District Court's observation that the Billboard Operators apparently filed Free Speech because of the need for "a long-overdue review of the somewhat confused status of outdoor advertising signs in the City." App. at 104. We cannot help but think that if the municipal regulations need revisions the City Council (which exercises the City's legislative powers)

31

should be the body to make the revisions, even though that process may be cumbersome, a not uncommon product of the operation of a democratic government.[8]  Indeed, the Agreement goes so far as to provide for a schedule of annual license fees that when paid will satisfy the license fee requirement of the Philadelphia Code.  Appellees explain that the "new annual billboard license fee replac[es] a former licensing ordinance struck down by the state courts more than a decade earlier."  Appellees' br. at 7-8.  It might be thought that if any function is legislative in nature, the setting of fees is such a function.

Our concern is in harmony with the court's observation in League of Residential Neighborhood Advocates, a case greatly different from this case on the facts but nonetheless

---

[8]In this respect this case cannot be compared to a case in which a limited dispute over a particular billboard or perhaps even a group of billboards is settled.  No one would suggest that a good faith settlement of such a narrow controversy is improper.  Quite to the contrary, settlement of litigation is a favored process.  See Wilcher v. City of Wilmington, 139 F.3d 366, 372 (3d Cir. 1998).  Here, however, as we already have indicated, the Agreement affects approximately 90% of the billboards in Philadelphia.  Thus, we think that appellees overstate what they believe is the danger of this litigation when in their brief they contend that if this case can "go forward, it could open the floodgates to other disputes, effectively permitting citizens to challenge the Solicitor's authority to settle any lawsuit and to question the terms of each settlement."  Appellee's br. at 24.

32

involving land usage, that "[a] settlement agreement cannot override state law absent a specific determination that federal law has been or will be violated," 498 F.3d at 1053, and "[a] federal court decree or agreement cannot be a means for state officials to evade state law," id. at 1055. There is no suggestion in the record or the parties' briefs that the Free Speech court made such a determination with respect to federal law and we are quite certain that it did not do so.[9] Moreover, even if a particular settlement agreement is not unreasonable, still there is a risk that the executive branch of government by agreement might enter into a "sweetheart" deal, whether by offering overly generous concessions to favored parties or by using litigation as a pretext for entering into dubious settlement agreements that serve as a vehicle for transferring money or other benefits to favored persons, a kind of wide-open corruption. Though we have no reason to question the integrity of the persons involved

---

[9]The Agreement provides that any party to it can submit it to the court "for its approval and entry of this Consent Agreement as a Final Order" but it further provides that, whether or not it is submitted to the court and whether the court approves it, the Agreement "shall nonetheless remain a fully binding and enforceable contractual agreement between the parties." App. at 71-72. According to appellants in a statement that appellees do not dispute, "[n]o party ever submitted the Settlement Agreement to the court for approval." Appellants' br. at 4. Furthermore the Free Speech docket sheets indicate that the parties to that litigation terminated the case by filing a notice of voluntary dismissal they had signed without participation by the court. App. at 43.

in reaching the settlement leading to the Agreement, the fact is that the corrupt things we describe do occur. See Thompson v. City of Atlantic City, 921 A.2d 427, 430 (N.J. 2007) ("We now hold the City's settlement with its own mayor was so infected with conflicts of interest that it is void as a matter of state law.").[10]

Finally, we point out that this opinion does not close the door to future challenges to the Agreement. First, we do not foreclose the possibility that the City Council itself, as well as billboard operators not included in the Agreement but who compete with the ones that are listed, have standing to challenge the Agreement. Second, we recognize that appellants may have standing in some capacity to assert their claims in the Pennsylvania state courts. Indeed, considering that the present lawsuit concerns a challenge to the Solicitor's authority to enter the Agreement in alleged violation of the Philadelphia Home Rule Charter and the local ordinances, even taking into account a federal court's obligation to exercise its jurisdiction when properly invoked, subject sometimes to a federal court abstaining from deciding a case or declining to exercise jurisdiction over state law claims ancillary to its exercise of federal question jurisdiction, we believe that a state court might

---

[10]In their brief appellees indicate that "[a]s the Settlement Agreement makes clear, the Solicitor entered into the Settlement Agreement after careful evaluation, and only after determining the Settlement Agreement to be in the best interest of the City of Philadelphia." Appellees' br. at 23. We have no reason at all to doubt that the statement is accurate.

34

well be a more appropriate forum than a federal court for this case. After all, the state court may have less exacting standing requirements, the nature of the claims involve significant questions under state law and procedures and, should the plaintiffs in that action be successful, the relief available in the state courts may be more feasible than that possible in the District Court.[11]

Notwithstanding the circumstance that we are affirming the dismissal, we modify the order of dismissal in one respect. Inasmuch as we are not passing on the merits of any appellants' claims under either federal or state law, we will modify the order of dismissal to the end that it will be with prejudice to the reinstitution of this action in the District Court but will be without prejudice to institution of a similar action in the state courts. In this regard we point out that once the District Court determined that appellants did not have standing, it necessarily

---

[11]Significantly, appellees in their brief contend that the "City, through the Solicitor, acted under the clear authority granted by the city's Home Rule Charter in entering the Settlement Agreement." Appellees' br. at 10-11. Appellants, on the other hand, asserted in their complaint that the Agreement was "contract zoning" which the Supreme Court of Pennsylvania has indicated is illegal. Carlino v. Whitpain Investors, 453 A.2d 1385, 1388 (Pa. 1982). This dispute between the parties over the scope of the Solicitor's power under the Home Rule Charter is precisely the type of issue that, if before us, we might certify for resolution by the Pennsylvania Supreme Court. See 204 Pa. Code § 29.451 (2008); 3d Cir. LAR Misc. 110.0.

35

determined that it did not have jurisdiction[12] and thus it could not decide the merits of the case.  See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94, 118 S.Ct. 1003, 1012 (1998) ("Without jurisdiction the court cannot proceed at all in any cause.  Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.") (internal quotation marks omitted); PSA, LLC v. Gonzales, 461 F. Supp. 2d 351, 359 (E.D. Pa. 2006).  As modified herein with respect to institution of a similar action in a state court, we will affirm the District Court's order entered on June 21, 2007, dismissing this case with prejudice and will remand the case to the District Court to modify its order of dismissal to conform with this opinion.  The parties will bear their own costs on this appeal.

[12]See supra note 3.

36